A99A0025. SOLOMON v. THE STATE.
(513 SE2d 520)

JOHNSON, Chief Judge.

Darren Solomon was arrested in Atlanta's Hartsfield International Airport and charged with trafficking in cocaine. He was found guilty after a bench trial. Solomon contends the trial court erred in denying his motion to suppress because the agents lacked sufficient basis to stop him and did not obtain valid consent to search his person. We disagree.

When reviewing a trial court's order on a motion to suppress, the appellate court construes the evidence most favorably to the upholding of the trial court's findings and judgment. *State v. Wright*, 224 Ga. App. 753, 754 (482 SE2d 441) (1997). Viewed in such a light, the

evidence shows the following: A GBI agent assigned to the airport's drug task force received a tip that Solomon's co-defendant, Lamont Fulwood, had traveled to Fort Lauderdale to purchase a large quantity of cocaine. The informant advised the agent that Fulwood would return in a couple of days. The agent contacted the airline and found that Fulwood had traveled to Fort Lauderdale the day before and was accompanied by Solomon. The agent learned from the informant that Solomon and Fulwood were cousins and that the cocaine was likely going to be strapped to Solomon's body. The informant added that the two men would probably split up around the taxicab stand and catch a taxicab to Fulwood's house. The agent considered the informant reliable because he had previously supplied information in three or four other cases.

Three days later, the agent was told by airline security that Solomon and Fulwood had boarded a flight from Fort Lauderdale to Atlanta. Agents watched the men get off the plane in Atlanta, go to the baggage claim area, wait, and then go outside to the taxicab stand without claiming any checked baggage. Solomon had a carry-on bag. Solomon and Fulwood were talking to a taxicab driver, and Solomon was about to get into a cab.

Several plainclothes agents approached Solomon and Fulwood. One of the agents asked if Solomon minded if he talked to him. At first Solomon said he did mind; then when the agent identified himself as a police officer, he said it was okay. The agent asked Solomon why he was in Atlanta, to which Solomon replied he was visiting an uncle here. When asked for the uncle's last name, Solomon did not respond. The agent asked Solomon what kind of work he did, to which Solomon replied that he did construction work. When the agent asked for his employer's name, Solomon said he did not know. The agent explained that he was trying to stop drugs from going in and out of the airport and asked Solomon if he could search his bag and his person. Solomon said he could. As the agent started to search the bag, he asked Solomon if one of the other agents could search his person. Solomon said he could not. The agent asked Solomon if he had something to hide. Solomon replied that he did not. The agent then asked if Solomon had any drugs on his person, to which Solomon gave no response. The agent told Solomon that, based on the information he had, he would be detaining Solomon and getting a warrant to search Solomon's person. No contraband was found in the bag.

The agent placed handcuffs on Solomon and took him to a police precinct inside the airport. Once there, Solomon asked the agent how long it was going to take. The officer replied "as long as it's going to take me to write a search warrant and to find a Judge to sign the search warrant." Solomon told the officer to "go ahead and search."

The agent found packages containing 650 grams of cocaine taped to Solomon's thighs.

1. *The initial stop.* Contrary to Solomon's contention, the agents did have a particularized and objective basis for stopping him.

"A police officer may make a brief, investigatory stop, provided the officer has a reasonable, articulable suspicion that the person stopped has been, is, or is about to be engaged in criminal activity, and the nature and extent of the detention [are] minimally intrusive." (Citations and punctuation omitted.) *Davis v. State*, 225 Ga. App. 627, 628 (2) (484 SE2d 655) (1997). In evaluating whether there is reasonable suspicion, " ' "the totality of the circumstances — the whole picture" ' " must be taken into account. *Britton v. State*, 220 Ga. App. 120, 122 (469 SE2d 272) (1996).

In this case, the agents were suspicious that Solomon was carrying drugs because they had information that Solomon's cousin flew to Fort Lauderdale, a known drug-source city, to get drugs and bring them back to Atlanta, he was traveling with Solomon, and the drugs were likely strapped to Solomon's body. Agents observed Solomon and his cousin deplane and then wait in and leave the baggage claim area with no checked baggage. The agents observed the men go to the taxicab stand and prepare to take a taxicab, as predicted by the informant.

"The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary . . . it may be the essence of good police work to adopt an intermediate response. A brief stop of [an] individual, in order to determine his identity or maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time." (Citations and punctuation omitted.) *Stewart v. State*, 227 Ga. App. 659, 660 (2) (490 SE2d 194) (1997). In light of the information supplied by the informant and other sources, including the officers' observations and confirmations from the airline, the stop was not unreasonable. See id. at 662 (2); *Stanley v. State*, 213 Ga. App. 95, 96 (443 SE2d 633) (1994); *Owens v. State*, 192 Ga. App. 671, 673-674 (1) (385 SE2d 761) (1989).

2. *The search of Solomon.* Solomon argues that he did not voluntarily consent to the search of his person. To support his position, Solomon cites *Murphy v. State*, 230 Ga. App. 365 (496 SE2d 512) (1998), and *Darby v. State*, 216 Ga. App. 781, 783 (2) (455 SE2d 850) (1995), which hold that " '[w]hen an officer represents to an accused that a warrant to search will be obtained if consent is refused, and does not have probable cause to secure the warrant, then the accused's consent is invalid.' " We do not agree that the holdings in those cases

require suppression of the evidence in this case.

First, we note that the agent's response to Solomon's query regarding how long he would be detained — "as long as it's going to take me to write a search warrant and to find a Judge to sign the warrant" — simply does not fall within the category of "last ditch ploys aimed at avoiding the requirement for a probable cause determination before a . . . magistrate." *Murphy*, supra at 368.

Second, where the details of a tip are corroborated by the personal observations of the investigating officers, a reliable informant's tip is sufficient to establish probable cause for a warrantless search. *Dupree v. State*, 232 Ga. App. 573, 574 (1) (502 SE2d 511) (1998); see *Wells v. State*, 212 Ga. App. 60, 63 (2) (441 SE2d 460) (1994). In this case, the agents received information from a reliable informant that Solomon's cousin was flying to Fort Lauderdale to get cocaine, that he would return to Atlanta in a couple of days, that Solomon would likely have the cocaine strapped to his body, and the men would separate before or at the taxicab stand. Prior to the search, the agents confirmed all but the information that the drugs were strapped to Solomon's body. They also learned that Solomon paid for his ticket in cash just before the flight, watched the men stand at baggage claim and leave without picking up any luggage, and were given suspicious responses by Solomon. Considering the totality of the circumstances, the trial court was authorized to find that the agents had probable cause to search Solomon. See generally *Lester v. State*, 226 Ga. App. 373, 376 (1) (487 SE2d 25) (1997). The trial court did not err in denying the motion to suppress. See generally *Dupree*, supra.

*Judgment affirmed. McMurray, P. J., and Andrews, J., concur.*

DECIDED MARCH 4, 1999.

*Stephen T. Smith*, for appellant.

*Robert E. Keller*, District Attorney, *Albert B. Collier*, Assistant District Attorney, for appellee.