A99A0230. DAWSON v. THE STATE.

(518 SE2d 477)

RUFFIN, Judge.

Neil Dawson was convicted of possession of cocaine with the intent to distribute. He appeals the denial of his motion to suppress evidence arising from the search of his automobile, arguing that the State did not have probable cause for the search. We affirm.

On appeal of a trial court's ruling on a motion to suppress, we are guided by three principles:

> First, when a motion to suppress is heard by the trial judge, that judge sits as the trier of facts. The trial judge hears the evidence, and his findings based upon conflicting evidence are analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support it. Second, the trial court's decision with regard to questions of fact and credibility must be accepted unless clearly erroneous. Third, the reviewing court must construe the evidence most favorably to the upholding of the trial court's findings and judgment.

(Citations, punctuation and emphasis omitted.) *Tate v. State*, 264 Ga. 53, 54 (1) (440 SE2d 646) (1994).

Officer Michael Albritton of the Richmond Hill Police Depart-

ment testified that, on September 27, 1996, he saw a white Cadillac traveling southbound on I-95. Albritton activated his radar gun, which showed that the car was traveling at 76 miles per hour, well over the 55 mile per hour speed limit. Albritton stopped the car, which was being driven by Dawson, and asked Dawson to get out of the car and produce his driver's license and proof of insurance. Dawson exited the vehicle and handed Albritton his driver's license, explaining that his insurance card was in the glove box. Dawson told Albritton that one of his co-workers was a passenger in the car. Albritton then approached the passenger door to speak with the passenger, Cosmo Thomas, and to get the insurance card from the glove box. As Thomas rolled down the passenger window, Albritton detected a strong odor of burnt marijuana coming from the interior of the car. Albritton testified that he was familiar with the smell of marijuana from his experience as a police officer and from his military training.

Albritton asked Dawson to move the vehicle to a less exposed position off the interstate, and wrote Dawson a ticket for speeding. Albritton then retrieved his drug dog, Jessica, from his patrol car and had Jessica perform a free-air search around the exterior of Dawson's vehicle. Jessica alerted on the right rear door of the car, indicating the presence of narcotics. Albritton asked Dawson if he would consent to a search of his car for drugs. After initially indicating that he would consent, Dawson refused to sign a consent form produced by Albritton. However, after Albritton informed Dawson that he had probable cause to search the vehicle even if Dawson refused, Dawson consented to a search and executed the consent form.

Albritton then had Jessica search the interior of the car, and she alerted on a briefcase in the rear passenger area. Albritton opened the briefcase and found two plastic bags, each one containing several smaller bags of a white powdery substance that appeared to be cocaine. Albritton also found a green leafy substance that appeared to be marijuana on the rear portion of the seat.

Dawson moved to suppress evidence resulting from the search, arguing (1) that his consent was not voluntarily given, and (2) that the drug dog's alerts did not provide probable cause to search the vehicle because the State did not prove the dog's reliability. The trial court denied the motion on both grounds.[1]

1. We have previously held that a drug dog's alert on a vehicle

---

[1] Dawson contends that his consent was invalid because it was not given until after Albritton stated that he had probable cause for the search even if Dawson refused. The State does not address this issue in its brief, stating that it does not rely on the consent because the search was supported by probable cause. Due to our holding below, it is not necessary to consider the validity of Dawson's consent.

gives an officer probable cause to believe that contraband is present therein. *Milan v. State*, 228 Ga. App. 310, 311 (491 SE2d 401) (1997); *Roundtree v. State*, 213 Ga. App. 793, 794-795 (446 SE2d 204) (1994); *Donner v. State*, 191 Ga. App. 58, 60 (380 SE2d 732) (1989). However, Dawson contends that the alert in this case was not, in and of itself, sufficient to establish probable cause because the drug dog was not shown to be reliable.

As an initial matter, Dawson is mistaken in focusing solely on the drug dog's alert as providing the basis for a finding of probable cause. As we stated in *State v. Gilman*, 218 Ga. App. 895, 897 (463 SE2d 720) (1995),

> the existence of probable cause is determined by whether, "given all the circumstances . . ., including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, [462 U. S. 213, 238 (103 SC 2317, 76 LE2d 527) (1983)].

"[P]robable cause need not be defined in relation to any one particular element, but may exist because of the totality of circumstances." (Punctuation omitted.) *Howie v. State*, 218 Ga. App. 45, 46 (1) (459 SE2d 179) (1995). In addition to the drug dog's alert, there was evidence that Officer Albritton detected a strong odor of burnt marijuana from inside the vehicle. In reviewing the trial court's denial of Dawson's motion to suppress, we consider whether the totality of the circumstances, and not merely the drug dog's alert, supports a finding of probable cause. See *O'Keefe v. State*, 189 Ga. App. 519, 526-527 (3) (376 SE2d 406) (1988) (regardless of whether odor of burning marijuana by itself supplies probable cause for search, it may be considered in totality of circumstances); *Holmes v. State*, 163 Ga. App. 753, 755 (1) (294 SE2d 719) (1982) (trooper's detection of odor of marijuana, together with totality of circumstances, sufficient to provide probable cause); *Johnson v. State*, 230 Ga. App. 535, 538 (496 SE2d 785) (1998) (drug dog's alert, together with totality of circumstances, sufficient to provide probable cause).

Although we are aware of no Georgia cases directly on point, several federal cases have discussed what evidence must be shown of a drug dog's reliability in order to find probable cause based on the dog's alert. In *United States v. Daniel*, 982 F2d 146, 151-152 & n. 7 (5th Cir. 1993), the Fifth Circuit held that, if it is shown that a dog is trained to detect the presence of controlled substances, it is not necessary to show how reliable the dog has been in the past in order to uphold the issuance of a search warrant based on the dog's alert. The

Fifth Circuit applied this ruling to warrantless searches in *United States v. Williams*, 69 F3d 27, 28 (5th Cir. 1995), holding that, "[b]ecause a showing of the dog's reliability is unnecessary with regard to obtaining a search warrant, a fortiori, a showing of the dog's reliability is not required if probable cause is developed on site as a result of a dog sniff of a vehicle."

The Sixth Circuit has held that "[f]or a positive dog reaction to support a determination of probable cause, the training and reliability of the dog must be established." *United States v. Diaz*, 25 F3d 392, 394 (6th Cir. 1994). However, that Court did not define the quantum of evidence necessary to establish a drug dog's reliability, stating that

> [w]hen the evidence presented, whether testimony from the dog's trainer or records of the dog's training, establishes that the dog is generally certified as a drug detection dog, any other evidence, including the testimony of other experts, that may detract from the reliability of the dog's performance properly goes to the "credibility" of the dog. Lack of additional evidence, such as documentation of the exact course of training, similarly would affect the dog's credibility. As with the admissibility of evidence generally, the admissibility of evidence regarding a dog's training and reliability is committed to the trial court's sound discretion.

Id. Thus, under *Diaz*, evidence that a dog is certified as a drug detection dog essentially constitutes prima facie evidence of the dog's reliability. Although the dog's "credibility" may be undermined by evidence of its lack of training or past unreliability, the ultimate determination as to whether the dog is sufficiently reliable to support a determination of probable cause is for the trial court as the trier of fact.

The Sixth Circuit has subsequently held that

> [a] positive reaction by a properly trained narcotics dog can establish probable cause for the presence of controlled substances. *United States v. Diaz*, [supra]. However, for such a reaction to support a determination of probable cause, the training and reliability of the dog must be established.

*United States v. Berry*, 90 F3d 148, 153 (6th Cir. 1996). However, the Court in *Berry* indicated that evidence that the dog has been trained as a drug detection dog is sufficient to establish its reliability:

> We find that the information contained in the affidavit [supporting the issuance of a search warrant] in this case was

sufficient to establish the training and reliability of the drug-detecting dog. The affidavit's references to the dog as a "drug sniffing or drug detecting dog" reasonably implied that the dog was a "trained narcotics dog." Further, the affidavit stated that the dog was trained and qualified to conduct narcotics investigations. . . . Contrary to defendant's suggestion, to establish probable cause, the affidavit need not describe the particulars of the dog's training. Instead, the affidavit's accounting of the dog sniff indicating the presence of controlled substances and its reference to the dog's training in narcotics investigations was sufficient to establish the dog's training and reliability. See *United States v. Daniel*, [supra at 151, n. 7] (rejecting defendant's argument that an affidavit must show how reliable a drug-detecting dog has been in the past in order to establish probable cause); *United States v. Venema*, 563 F.2d 1003, 1007 (10th Cir. 1977) (stating that an affidavit in support of a search warrant need not describe the drug-detecting dog's educational background and general qualifications with specificity to establish probable cause).

Although these cases differ as to whether proof of a dog's "reliability" is necessary, they all properly recognize that evidence that the dog has been trained and certified as a drug detection dog constitutes prima facie evidence of its reliability for purposes of a probable cause determination. Although a defendant may try to attack the dog's reliability by showing that it was not properly trained or that it has been unreliable in the past, such evidence presents an issue of fact for the trial court, and its decision must be accepted on appeal unless clearly erroneous. See *Tate*, supra. Moreover, in determining whether probable cause exists, the trial court does not focus simply on the drug dog's alert, but on whether the totality of the circumstances shows a fair probability of the presence of contraband. See *Gilman*, supra. Where a drug dog's alert is the *only* basis for suspecting the presence of contraband (e.g., where the dog alerts on luggage carried by a passenger at the airport), evidence that the dog has been extremely unreliable in the past may lead the trial court to conclude that the dog's alert, by itself, does not indicate a "fair probability" of the presence of contraband. However, where there are additional indications of the presence of contraband (e.g., where an officer detects an odor of a controlled substance and uses the drug dog to confirm his suspicion), the totality of the circumstances may support a finding of probable cause notwithstanding evidence of the dog's unreliability.

In this case, Officer Albritton testified that he and the dog, Jessica, had been trained together in drug detection at the Global Train-

ing Academy in Texas. Albritton and Jessica received a score of 97% on a performance test involving searches of buildings, vehicles, and luggage. They received a certificate of training on August 1, 1996, indicating the successful completion of 120 hours of training. The State introduced Jessica's training records from the academy, indicating that she successfully located hidden drugs on 95 out of 99 occasions. The State also introduced records kept by Albritton relating to Jessica's continuing training after leaving the academy. According to these reports, during the months of August and September 1996, Jessica successfully located narcotics on 49 occasions during training without a single false alert. Albritton also testified about Jessica's performance during actual field searches in August and September. Although Albritton's records of these searches are somewhat unclear, it appears that during these two months Jessica performed 92 vehicle searches. On 58 occasions she located contraband, and on 22 occasions she alerted but no contraband was found. Albritton testified that the only way to reliably evaluate a dog's performance is through controlled tests, since a dog may correctly detect the residual odor of contraband even though the contraband itself has been discarded. Thus, an apparent false alert in a field search may not indicate a mistake by the dog, although there is no way to verify whether the dog actually detected a residual odor of contraband or whether it made a false alert.

Although Jessica may have alerted on occasion where no drugs were found, there was significant evidence of her reliability and training in detecting controlled substances, and the trial court did not err in relying on her alert to support a finding of probable cause. Moreover, the reliability of Jessica's alert in this case was supported by the fact that Officer Albritton himself detected an odor of burnt marijuana inside the automobile. The trial court's finding that the totality of the circumstances showed a fair probability of the presence of contraband was not clearly erroneous. See *Holmes*, supra; *Johnson*, supra.

2. Dawson argues that the trial court erred in admitting evidence regarding the drug dog because the Richmond Hill Police Department has not published rules regarding the use of drug dogs, as he contends is required by OCGA § 50-13-3. Regardless of the merits of this argument, Dawson did not make any objection below on this ground, and cannot raise such objection for the first time on appeal. See *Gordon v. State*, 235 Ga. App. 169 (2) (508 SE2d 782) (1998).

3. In a supplemental brief, Dawson argues that because he was not placed under arrest at the time of the search, the search did not qualify as a valid "search incident to arrest." See *Knowles v. Iowa*, 525 U. S. 113 (119 SC 484, 142 LE2d 492) (1998). As an initial matter,

Dawson has not shown that he made this argument in the trial court. Moreover, his argument is irrelevant, since the search was based on probable cause and was not incident to an arrest. "Once the officer had probable cause to believe that contraband was contained somewhere in [Dawson's] automobile, he was authorized to conduct a search of its contents, including the [briefcase]." *Boggs v. State*, 194 Ga. App. 264, 265 (390 SE2d 423) (1990). See also *Turner v. State*, 213 Ga. App. 77, 78 (1) (443 SE2d 703) (1994); *State v. Dopson*, 204 Ga. App. 51-52 (418 SE2d 623) (1992).

*Judgment affirmed. McMurray, P. J., and Andrews, J., concur.*

DECIDED MAY 26, 1999 — CERT. APPLIED FOR.

*Lloyd D. Murray*, for appellant.

*Dupont K. Cheney, District Attorney, Carole E. Wall, Assistant District Attorney*, for appellee.