## A00A0332. GORDON v. THE STATE.
### (528 SE2d 838)

JOHNSON, Chief Judge.

Darryl Gordon appeals his conviction for trafficking in cocaine, arguing that the trial court erred in denying his motion to suppress. For reasons which follow, we affirm.

When a motion to suppress is heard by a trial judge, that judge sits as the trier of facts and his findings will not be disturbed if there is any evidence to support them.[1] The reviewing court must construe the evidence most favorably to uphold the trial court's findings and judgment.[2]

Viewed in such a light, the evidence shows that special agents with the Drug Enforcement Administration Airport Task Force received a telephone call from the Atlanta Police Department concerning information provided by an anonymous tipster. Although the agents referred to the tipster as a "concerned citizen," the record shows that no officer provided evidence that the tipster was a "reliable informant" or evidence that the tipster satisfied the criteria for being labeled a "concerned citizen."[3] Notwithstanding this omission, we find that the information given was detailed enough to provide some basis for predicting Gordon's future behavior and that the reliability of the information was established when a number of the details were corroborated by the investigation and observations of the agents.[4] We therefore conclude that the agents had reasonable suspicion to stop Gordon.

The tipster gave Gordon's full name, stated that Gordon would be traveling from Los Angeles to Las Vegas and then to Atlanta via American West flight 710, and informed the Atlanta Police Department that Gordon would be carrying cocaine on his person. The tipster described Gordon as a black male wearing a large, long shirt and black, baggy blue jeans. According to the tipster, Gordon was carrying a black backpack-type bag.

Agents with the DEA Airport Task Force confirmed the flight information given by the tipster, confirmed that Gordon was listed as a passenger on the flight, discovered that Gordon had checked bags, and waited at the gate for the plane to arrive. Subsequently, the agents observed a black male wearing clothing and carrying a bag matching the tipster's descriptions come off the airplane and exit the Jetway. The individual appeared to be scanning the gate area trying to see if anyone was watching him. The agents followed Gordon to baggage claim, waited until he claimed his luggage, and then approached Gordon.

The agents identified themselves as police officers and showed Gordon their credentials. Gordon agreed to speak with the agents and allow them to see his airline ticket and identification. After con-

---

[1] *Dawson v. State*, 238 Ga. App. 263 (518 SE2d 477) (1999).

[2] Id.

[3] See *Stewart v. State*, 217 Ga. App. 45 (456 SE2d 693) (1995); compare *Dearing v. State*, 233 Ga. App. 630 (505 SE2d 485) (1998).

[4] See *Buffington v. State*, 228 Ga. App. 810, 812 (492 SE2d 762) (1997).

firming that Gordon was the individual identified by the tipster, agents advised Gordon that their job was to prevent drugs from coming through the airport and asked if they could search his person and his bags. Gordon became hostile and refused. Gordon told the agents that if they wanted to search his bags, they needed to get a search warrant. The agents then detained Gordon until they could obtain a search warrant. They drove him to their office outside the airport, handcuffing him for their safety and his safety due to his hostile behavior upon questioning and because they believed he was going to flee from their custody.

Prior to applying for the search warrant, the agents placed Gordon's bags in a lineup with other bags and brought in a certified "drug dog." The dog alerted on Gordon's backpack as well as his checked bag. Gordon had been detained approximately 20 minutes before the drug dog alerted on his bags. A search warrant was obtained, and the subsequent search of the backpack revealed 576 grams of cocaine.

1. Gordon claims the evidence should have been suppressed because the agents had no independent knowledge of any wrongdoing justifying his detention other than the information from the anonymous tipster.

Contrary to Gordon's contentions, the agents did have reasonable suspicion to stop and detain him. In evaluating whether there was reasonable suspicion, we must take into account the totality of the circumstances.[5] Although a tip provided by an informant of unknown reliability will not ordinarily create a reasonable suspicion of criminal activity, reliability may be established if the tip is detailed enough to provide some basis for predicting the future behavior of the suspect and those details are corroborated by the observations of the police.[6]

The tipster in this case accurately predicted Gordon's future behavior in detail. The tipster provided detailed information including Gordon's name, his physical description, a description of his clothing and carry-on bag, and information regarding his flight itinerary, including the route and airline. These details about Gordon and his trip were independently verified by the agents, some before his flight's arrival in Atlanta and some after Gordon got off the airplane. We conclude that the tip, under the totality of attendant circumstances, provided reasonable, articulable suspicion to justify an investigative stop.[7]

[5] *Solomon v. State*, 236 Ga. App. 778 (513 SE2d 520) (1999).

[6] *Stanley v. State*, 213 Ga. App. 95, 96 (443 SE2d 633) (1994).

[7] See id.; *State v. Holton*, 205 Ga. App. 434, 436-437 (1) (422 SE2d 295) (1992).

The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary it may be the essence of good police work to adopt an intermediate response. A brief stop of an individual, in order to determine his identity or maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time.[8]

In light of the verification of the information supplied by the tipster, coupled with the agents' observations of Gordon's behavior upon exiting the plane and his hostility upon being advised of the reason for his stop, the stop was reasonable.[9]

2. Gordon was not detained an unreasonable amount of time. The agent's reasonable suspicion that Gordon possessed drugs warranted detaining Gordon for the approximately 20-minute period before the arrival of the drug dog.[10] The trial court did not err in denying Gordon's motion to suppress.

*Judgment affirmed. McMurray, P. J., and Phipps, J., concur.*

DECIDED JANUARY 24, 2000.

*Steven M. Frey*, for appellant.
*Robert E. Keller, District Attorney, Adrian Britt, Assistant District Attorney*, for appellee.

---

[8] (Citations and punctuation omitted.) *Solomon*, supra at 780 (1).
[9] See id.; *Stanley*, supra.
[10] *Sprauve v. State*, 229 Ga. App. 478, 480 (2) (494 SE2d 294) (1997) (physical precedent only).
[1] OCGA § 17-7-52 (b).