A00A0681. MONTERO v. THE STATE.

(537 SE2d 429)

BLACKBURN, Presiding Judge.

On interlocutory grant, Angel Samuel Montero appeals the trial court's denial of his motion to suppress evidence of marijuana found

in a closed container in the trunk of his car following a routine traffic stop for tinted windows. Because this case is controlled by *DiSanti v. State*,[1] not *Boggs v. State*,[2] we find that the officer who stopped Montero's vehicle had no probable cause to detain Montero while he obtained the services of a drug dog to investigate the sealed package in the trunk for which Montero had withdrawn consent to search. Accordingly, we reverse.

In *DiSanti*, supra, the defendant was initially stopped for speeding. After the officer issued a warning, he asked the defendant if he could search his car, and DiSanti consented. The officer found a package wrapped in birthday paper in the trunk of the car. DiSanti explained that the package was a gift for his daughter. The officer then told DiSanti that he believed the package contained cocaine and asked if he could open it. DiSanti refused to let the officer open the package. The officer told DiSanti he was going to detain him until a drug dog arrived on the scene. When the drug dog arrived an hour later, cocaine was found in the package.

Reversing the trial court's denial of the defendant's motion to suppress, we held:

> It is recognized that no "bright line" rule or "rigid time limitations" can be imposed in determining whether detention of a person constitutes a mere investigative stop requiring only an articulable suspicion or an arrest requiring the existence of probable cause at its inception. *United States v. Sharpe*, 470 U. S. 675, 685 (105 SC 1568, 84 LE2d 605) [(1985)]; *United States v. Hardy*, 855 F2d 753, 759 (11th Cir. 1988). Nevertheless, this court recently has held that it would stretch the imagination to say that a 30-minute detention was justifiable, under *Terry v. Ohio*, 392 U. S. 1 (88 SC 1868, 20 LE2d 889) [(1968)], when the officer waited for the arrival of a drug dog and magistrate and the defendant was not free to leave. *Schmidt v. State*, 188 Ga. App. 85, 87 (372 SE2d 440) [(1988)].

*DiSanti*, supra at 334 (1).

In stark contrast to *DiSanti* is *Boggs*, supra. In *Boggs*, the defendant consented not only to the initial search of the car by the officer *but also* to a subsequent search by a drug dog. Thus, in *Boggs*, unlike *DiSanti*, the drug dog search and the detention therefore were consensual. We note that *Boggs* did not raise the issue of the propriety of a police officer detaining a defendant to seek permission to

---

[1] *DiSanti v. State*, 190 Ga. App. 331 (378 SE2d 729) (1989).
[2] *Boggs v. State*, 194 Ga. App. 264 (390 SE2d 423) (1990).

search his vehicle after the investigation for which the stop was made has been concluded. Therefore, this issue and its factual variants were not addressed in that case. Montero does not raise that issue here, and therefore, it is not before us in this case. We note, however, that police officers are not generally free to detain private citizens without probable cause where an investigatory stop has been concluded without charges, and the detained citizen is free to go, without further interference or detention by the police officer. See *Terry v. Ohio.*

On appellate review of a motion to suppress, the trial court's findings as to disputed facts are accepted by the appellate court, unless clearly erroneous. However, where the evidence is undisputed and there is no question regarding the credibility of witnesses, the trial court's application of law to those undisputed facts is subject to de novo review. *Vansant v. State.*[3] In this case, the relevant facts are undisputed, so we conduct a de novo review.

The facts of the present case are similar to *DiSanti*, not *Boggs.* At 1:25 p.m. on November 4, 1997, Montero was driving his car on Interstate 20 in Columbia County when he was stopped by Officer Flury of the Georgia State Patrol. Flury testified that he suspected that the car windows were too darkly tinted. Flury did not cite Montero for a violation following his investigation of the tinted windows but gave Montero a warning for the window tint and returned his license, thereby terminating the purpose and scope of the original stop. At this point, Montero was free to go, and Officer Flury had no authority to stop or detain him, absent probable cause arising from occurrences since the termination of the concluded investigation, or new facts related thereto.

However, Officer Flury then detained Montero, interrogated him further, and asked him if he could search the car and its contents. When asked why he made this request, Flury testified that, in general, drugs were being transported down I-20 and the State Patrol had been conducting searches of cars stopped by them. Flury had no probable cause or reasonable and articulable suspicion that Montero was transporting contraband at that time. To the contrary, the reasoning behind the request to search, as testified to by Officer Flury, was to carry on a general plan to search the cars of private citizens when they are stopped by police officers for unrelated reasons, in an attempt to interdict the transportation of drugs. While the interdiction of the flow of drugs is an admirable goal, the State is not free to ignore constitutional safeguards in order to accomplish it, and neither is this Court.

---

[3] *Vansant v. State*, 264 Ga. 319, 320 (1) (443 SE2d 474) (1994).

After obtaining Montero's consent, Flury searched the passenger compartment of the car and found no contraband. He then searched the trunk, where he found a large brown cardboard box which was taped shut. Officer Flury testified that Montero began acting nervously and withdrew his consent to search the box. "When we got to that [box], he said we couldn't search that."

At that point, Flury had completed his search of Montero's car, but he would not let Montero leave because he wanted to search the taped box as well. Flury stated, "We came up on an object that was — that he would not allow us to search, and I wanted to go further with the K-9." Therefore, approximately 35 minutes after the initial stop for tinted windows began, Flury contacted an officer with the police K-9 unit who arrived approximately 20 minutes later. Almost an hour after Montero had been stopped for tinted windows, the drug dog indicated the presence of marijuana in the sealed box found in the trunk of Montero's car.

Montero does not dispute the validity of the initial stop of his car, notwithstanding the fact that there is no conclusive evidence in the record that his car windows were, in fact, too darkly tinted at the time of the stop. However, Montero argues that the scope of the initial stop was exceeded, he withdrew his consent to search the box in his trunk, and he was thereafter unlawfully detained. We agree.

Lacking even articulable suspicion, Flury arrested Montero without probable cause. Flury gave Montero a Hobson's choice of either staying with his car until the K-9 unit arrived or being stranded on the interstate. Montero was thus no longer free to leave, and his detention, under these facts, "is not authorized by *Terry v. Ohio*, is thus an arrest, and must therefore be supported by probable cause at its inception to be legal." *Milan v. State.*[4]

Flury's only reasons for holding Montero were his nervousness, his own desire to search the box in Montero's trunk, and the fact that, in general, contraband was being transported down I-20. Many people show signs of nervousness during police encounters, and this Court has held that nervousness does not provide reasonable suspicion of criminal behavior as a matter of law. See *State v. Kwiatkowski.*[5] Montero was as free to withdraw his consent to search his car in connection with the sealed box, as he was not to give such consent in the first place, and he had validly done so. See *DiSanti*, supra; *Davidson v. State*[6] ("Once a voluntary consent is legally obtained, it continues until it is either revoked or withdrawn.").

Citing *Boggs*, supra, the State argues that, although Montero

---

[4] (Citation omitted.) *Milan v. State*, 228 Ga. App. 310, 311 (491 SE2d 401) (1997).

[5] *State v. Kwiatkowski*, 238 Ga. App. 390, 393 (519 SE2d 43) (1999).

[6] *Davidson v. State*, 237 Ga. App. 870, 872 (516 SE2d 550) (1999).

refused permission to search the box, he did not withdraw consent to search the car and that the drug dog was called in to complete the search of the car. The testimony of Officer Flury, however, repudiates that argument and establishes that the search by the K-9 unit was prompted by Montero's *withdrawal* of consent to search. Officer Flury testified that he had already completed a search of the passenger compartment and trunk of the car; he wanted to search the box. He further testified that he called for the K-9 unit specifically to search the sealed box, "He didn't want us to touch the box. He didn't want us to open the box, and that's when I called for a K-9 unit." He was asked, "At that time, you asked permission [to search the box] and he said no and that's when you decided to call the dog; is that correct, sir?" Flury responded, "Yes, sir. . . . [H]e would not allow us to search [the box], and I wanted to go further with the K-9." Under the above facts and law, Officer Flury had no authority to "go further with the K-9" at that point. The search of the car in this case was over long before a drug dog was called. And Montero, in direct violation of his Fourth Amendment rights, was detained by Officer Flury, who had no probable cause, while he called in a drug dog. Also, Officer Flury's knowledge that drugs were being transported down I-20 provided no basis whatsoever to establish probable cause as to Montero.

Therefore, even viewing the totality of the circumstances, as the State urges us to do, the tinted windows, nervousness, and a withdrawal of a consent to a search are not sufficient to establish a reasonable suspicion of criminal conduct which would authorize additional investigation or the probable cause necessary to arrest Montero. The tinted windows hid nothing and provided no support for the State's position. Nervousness is not sufficient to authorize the detention, and Montero had withdrawn his consent to search the car in connection with the sealed box, and the search of the remainder of the car had been completed. There was no basis to detain Montero, and the illegal arrest tainted the subsequent search. See *Payne v. State*.[7]

The trial court erred by denying Montero's motion to suppress.

*Judgment reversed. Barnes, Phipps and Mikell, JJ., concur. Johnson, C. J., Pope, P. J., and Eldridge, J., dissent.*

ELDRIDGE, Judge, dissenting.

I respectfully dissent.

When a motion to suppress is heard by a trial judge, the judge sits as the trier of facts and his findings will not be disturbed if there

---

[7] *Payne v. State*, 244 Ga. App. 734 (536 SE2d 791) (2000).

is any evidence to support them.[8] This Court must construe the evidence most favorably to uphold the trial court's findings and judgment.[9]

In this case, there is no question that the stop of appellant Montero was valid. There is no question that Montero validly consented to the search of his car. There is no question that Montero did not consent to a search of the box in the trunk of his car. The only question is whether at the time Montero refused to let the State Trooper search the *box*, he also withdrew his consent to search the *car*.

The law regarding the withdrawal of consent in warrantless searches has developed in a piecemeal fashion. Though certain general principles are established, some gaps remain in our interpretation of the Fourth Amendment guarantees in this context. It is fundamental, however, that "[c]onsent may be as limited as the consenter wishes, and the search may not exceed the reasonably understood parameters."[10] While the validity of the consent obtained by Montero has not been questioned here, it is also a fundamental precept that "[w]hen consent to search is in issue, the State has the burden of proving the consent was freely and voluntarily given."[11]

While recognizing these important legal principles, the broad language of these cases did not intend the results which the majority reaches here; they arose out of different fact situations and applied to those specific contexts.[12] This case, also, is fact specific, and a different legal principle controls. Here, the facts are controlled by the longstanding principle that "[o]nce a voluntary consent is legally obtained, it continues until it either is revoked or withdrawn."[13] And whether Montero withdrew his consent to search the car when he refused to allow the trooper to search the box is a factual determination for the trial court, based on the totality of the circumstances.[14]

The trial court found that Montero did not withdraw his consent to search the entire car; he only denied access to the box. The court

---

[8] *Gordon v. State*, 242 Ga. App. 50, 51 (528 SE2d 838) (2000); *State v. Swift*, 232 Ga. 535, 536 (1) (207 SE2d 459) (1974).

[9] *Dawson v. State*, 238 Ga. App. 263 (518 SE2d 477) (1999).

[10] *Springsteen v. State*, 206 Ga. App. 150, 152 (424 SE2d 832) (1992).

[11] *State v. Long*, 232 Ga. App. 445-446 (502 SE2d 298) (1998).

[12] While not decided here, it appears that law enforcement officers would be unduly burdened if a defendant had the unfettered right to withdraw consent when an officer approaches an illegal substance; withdrawal of consent under such circumstances may raise issues regarding reasonable articulable suspicion to detain for further investigation without consent. *Terry v. Ohio*, supra.

[13] *Morris v. State*, 239 Ga. App. 100, 101 (1) (a) (520 SE2d 485) (1999); *Mallarino v. State*, 190 Ga. App. 398, 403 (379 SE2d 210) (1989); *Bell v. State*, 162 Ga. App. 79, 81 (290 SE2d 187) (1982); *Ferguson v. Caldwell*, 233 Ga. 887, 892 (213 SE2d 855) (1975).

[14] See, e.g., *Schneckloth v. Bustamonte*, 412 U. S. 218, 227 (93 SC 2041, 36 LE2d 854) (1973) ("the question whether a consent to a search was in fact 'voluntary' . . . is a question of fact to be determined from the totality of all the circumstances.").

found that the drug dog was summoned within 15 minutes to accomplish an intensified search of the car; the fact that the dog then alerted on the box during the consensual search of the car provided the probable cause to search the box, regardless of Montero's expressed desire that the box not be searched:

> [Court:] When the dog alerted for drugs, that factor combined with the factors prompting the use of the drug dog in the first instance, *which was consent to search*, established probable cause to believe he was in possession of illegal drugs within his vehicle authorized the subsequent search of the interior. . . .
> [Defense:] To a point, but then he says, No, the search is over. He can —
> [Court:] I thought he said, No, you couldn't search that box. . . .
> [Defense:] So, I'm saying that's correct.
> [Court:] Okay.
> [Defense:] So the search is over at that time.
> [Court:] No, you just can't search the box.
> [Defense:] Okay.
> [Court:] But you've still got a right to search around the car. . . . And it [*Johnson v. State*][15] says when the dog alerts that there's drugs inside the car, or in some place that he's refusing to allow them to search, that's probable cause to search it. . . . I think the issue is once you've given the right to search, I don't disagree that he can then limit his search or he can totally stop the search. My information, or the evidence I got, is that he told them that they couldn't search that box which was in the interior of the trunk. . . . Then the dog came in there and from the outside of the car the dog indicated the presence of drugs. And the fact that you've got the dog indicating the presence of drugs and a search which was legal because he consented to it allows you to go further and search the box.[16]

There was evidence to support the trial court's findings of fact and law. The State Trooper testified that Montero gave him consent to search the "vehicle and its contents" and that when he opened the trunk,

> [Trooper:] We came up on an object that was — that he

---

[15] 230 Ga. App. 535, 538 (496 SE2d 785) (1998).
[16] (Emphasis supplied.)

would not allow us to search, and I wanted to go further with the K-9.

[Defense:] If a person gives you permission to search their vehicle, can they rescind that search at any time?

[Trooper:] Yes, sir.

[Defense:] And he did rescind it, didn't he?

[Trooper:] Yes, sir, on that one item. . . .

[Defense:] But he withdrew the consent, didn't he?

[Trooper:] He just said he didn't want us to search that box.

Montero did not testify at the motion hearing. There was no evidence that Montero ever withdrew his consent to search the car. Nor was there evidence that, when Montero told the State Trooper not to search the box, he was withdrawing his consent to search the entire car. Further, the K-9 handler testified that Montero was present when the K-9 began to work the outside of the car, and Montero did not say anything. The K-9 effected an open air search around the entire vehicle. The dog subsequently alerted on the trunk and then on the box in the trunk. The box was then searched, and 21 pounds of marijuana were seized from therein.

> The officer had no probable cause to believe that appellant's vehicle contained contraband before the drug dog alerted. However, the officer's actions prior to that time were undertaken only with appellant's consent. Once a voluntary consent is legally obtained, it continues until it either is revoked or withdrawn. A valid consent eliminates the need for either probable cause or a search warrant. When the drug dog did alert to the presence of contraband in the vehicle, the officer then had probable cause to believe that contraband was contained somewhere therein. A sniffing dog may provide probable cause for the issuance of a search warrant, or when exigent circumstances are present, justify a search without a warrant. Once the officer had probable cause to believe that contraband was contained somewhere in appellant's automobile, he was authorized to conduct a search of its contents, including the . . . box.[17]

The majority reverses based on *DiSanti v. State*,[18] finding that Montero was illegally detained since "[the trooper] would not let Montero leave because he wanted to search the taped box as well." The problem with the majority's position is that, unlike in *DiSanti*,

---

[17] (Citations and punctuation omitted.) *Boggs v. State*, supra at 264-265.

[18] Supra.

there is absolutely no evidence in the record that the trooper "would not let Montero leave." In *DiSanti*, the officer believed that "appellant had revoked his consent to search, and from that moment on, he considered that appellant was no longer free to go."[19] *DiSanti* involved a "renewed detention, unrelated to either the speeding offense investigation or his consent to search."[20] No such factual circumstances are presented here. In this case, the trooper testified that Montero, himself, was free to leave but the car would be detained as long as the trooper had a valid consent to search it:

> [Defense:] If he had decided to leave at that time, would you have arrested him or held him?
> [Trooper:] I'd of let him go. The vehicle couldn't have left.
> [Defense:] Okay. Why is that?
> [Trooper:] Because we had got permission to search the vehicle. We came upon on an object that was — that he would not allow us to search, and I wanted to go further with the K-9. . . .
> [Defense:] But he withdrew consent, didn't he?
> [Trooper:] He just said he didn't want us to search the box.

The trooper's motivation for bringing in the drug dog is irrelevant, as long as Montero did not withdraw consent to search the car.[21] Montero never withdrew consent to search the car. The dog was brought in to search the car. And, Montero never indicated that he wanted to leave — so defense counsel's question regarding "if he had decided to leave" was hypothetical only. Thus, Montero was not detained outside the scope of his consent to search the car, since Montero's consent to search his car "continued until withdrawn or revoked."[22]

In this fact-specific case, the trial court found that Montero's consent to search the car was not revoked or withdrawn at the time he refused to permit a search of the box. The drug dog was called in pursuant to Montero's continuing consent to search the car. Such findings are supported by the evidence, and in fact, there is no evidence in contradiction. Construing the evidence to support the trial court's findings and judgment, as we must,[23] the trial court properly denied Montero's motion to suppress, and the judgment of the court below should be affirmed.

---

[19] Id. at 333.

[20] Id. at 334.

[21] *Ohio v. Robinette*, 519 U. S. 33, 38 (117 SC 417, 136 LE2d 347) (1996) ("the fact that an officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action. [Cit.]").

[22] *Boggs v. State*, supra at 264-265.

[23] *Gordon v. State*, supra at 51.

I am authorized to state that Chief Judge Johnson and Presiding Judge Pope join in this dissent.

DECIDED JULY 14, 2000.

Fleming, Blanchard, Jackson & Durham, James G. Blanchard, Jr., Paul W. David, for appellant.
Daniel J. Craig, District Attorney, Charles R. Sheppard, Assistant District Attorney, for appellee.