## A01A1464. SATTERFIELD v. THE STATE.
(553 SE2d 820)

ELDRIDGE, Judge.

Following a Hall County bench trial, Larry Shane Satterfield was convicted of a single count of possession of methamphetamine with intent to distribute. He was sentenced to five years probation, to serve the first six months under intensive supervision, and, among other special conditions of his probation, to pay a $2,000 fine. On appeal, the defendant challenges the denial of his motion to suppress the methamphetamine found on his person by police following a pat-down search variously arguing that the pat-down search was unlaw-

ful and that the arresting officers had neither articulable suspicion nor probable cause to seize him. We disagree and affirm.

Upon defendant's motion to suppress at the bench trial, Hall County Sheriff's Investigator Gary Moore testified that he was paged by a confidential informant with whom he had previously worked. When Investigator Moore returned the call, the informant told Moore that the defendant was then in a Gainesville bar known as the Crazy Horse; that she had earlier observed the defendant offer to sell a quantity of "crank," the street name for methamphetamine; and that the defendant returned it to his right front pants pocket after doing so. On this tip, Investigator Moore traveled to the Crazy Horse where the informant further described the defendant as wearing blue jeans and a yellow pullover having "Tommy Hilfiger" embroidered across the back of its collar. At Investigator Moore's request, the informant then located the defendant, pointing him out in a crowd of more than 400 patrons at the bar.

Inasmuch as Scott Ware, another Hall County Sheriff's Investigator, was working part time at the Crazy Horse on the evening in issue and in uniform, Investigator Moore enlisted Ware's support after obtaining the defendant's description from the informant. The two then effected an investigatory stop of the defendant,[1] Moore in plainclothes by showing the defendant his badge and Ware by asking the defendant to accompany them to the rear of the Crazy Horse. The defendant came voluntarily, except that several times defendant's efforts to put his hands in his pants pockets prompted both officers to tell him not to do so.

Behind closed doors in a back room away from the crowded bar, the defendant initially denied having any weapons or drugs on his person. As he did so, Investigator Moore patted the defendant's right front pants pocket with the back of his hand, felt what he believed was a knife, and said, "I thought you didn't have any weapons." His denial thus challenged, the defendant admitted that he had a knife. Investigator Ware requested the defendant's consent to search. When no reply was forthcoming, Investigator Moore reached in the defendant's right front pants pocket, removing a knife and a plastic baggie containing what Moore believed to be illegal drugs. A second search of the pocket produced another plastic baggie containing suspected drugs. Investigator Moore then placed the defendant under formal arrest and handcuffed him, although he regarded the defendant as in a custodial arrest status upon first finding methamphetamine in the

---

[1] On cross-examination, Investigator Moore declined to describe the defendant's detention as custodial. See *Small v. State*, 243 Ga. App. 678, 679 (1) (534 SE2d 139) (2000) (investigatory stop or detention a Fourth Amendment seizure in circumstances where police conduct would cause reasonable person to believe he or she no longer free to leave).

defendant's pocket. Subsequent testing showed that the baggies contained a total of 6.4 grams of methamphetamine or an amount which, when separately packaged and divided by two, was consistent with methamphetamine as typically distributed, termed an "eight ball."[2]

Contrary to defendant's characterization of the informant as unreliable, Investigators Moore and Ware did have reasonable suspicion to stop and detain him. In analyzing whether there was reasonable suspicion, we are required to assess the totality of the circumstances. *Solomon v. State*, 236 Ga. App. 778, 780 (1) (513 SE2d 520) (1999).

> Although a tip provided by an informant of unknown reliability will not ordinarily create a reasonable suspicion of criminal activity, reliability may be established if the tip is detailed enough to provide some basis for predicting the future behavior of the suspect and those details are corroborated by the observations of the police. *Stanley v. State,* 213 Ga. App. 95, 96 (443 SE2d 633) (1994).

*Gordon v. State*, 242 Ga. App. 50, 52 (1) (528 SE2d 838) (2000).

Although it is unclear in the record whether Investigator Moore considered the informant to be reliable, there was evidence that he had a prior working relationship with the informant; that the informant's tip was unsolicited; and that it came just after she had seen the defendant in possession of methamphetamine. However, pretermitting the question of whether the informant was of known reliability, the information upon which these officers acted was sufficient to create a reasonable, articulable suspicion upon which to conduct an investigatory stop of the defendant. Investigator Moore went to the Crazy Horse immediately after returning the informant's call and there obtained a detailed description of the defendant from the informant before seeking the defendant out in the crowd. In doing so, Investigator Moore corroborated for himself the informant's predictions, authorizing Investigators Moore and Ware to temporarily detain and question the defendant based upon the reasonable suspicion that he was in possession of methamphetamine. See *Gordon*, supra; see also *Thomas v. State*, 231 Ga. App. 173, 174 (498 SE2d 760) (1998).

At an investigatory stop under *Terry v. Ohio*, 392 U. S. 1, 28-31 (88 SC 1868, 20 LE2d 889) (1968), a police officer is authorized to conduct a "limited protective pat-down for weapons . . . after 'reasonable suspicions' that a crime has been committed justify the *stop*."

---

[2] Investigator Moore defined an eight ball as weighing 3.5 grams or an eighth of an ounce.

(Emphasis in original.) *Montoya v. State*, 232 Ga. App. 24, 27-28 (499 SE2d 699) (1998) (Eldridge, J., concurring specially in judgment only); see also *Thomas v. State*, supra (police officer authorized limited pat-down search of suspect for weapons if officer reasonably believes suspect poses threat of safety risk to self or others). Moreover, "[i]t is not unreasonable for officers to anticipate that those who are suspected of involvement in the drug trade might be armed." (Citations and punctuation omitted.) *Stewart v. State*, 227 Ga. App. 659, 660-661 (2) (490 SE2d 194) (1997). That the defendant several times had to be ordered not to put his hands in his pocket is not inconsistent with the reasonable belief that he might have been armed as a drug trafficker. *Thomas v. State,* supra at 175. Neither is it inconsistent with a reasonable anticipation of the presence of drugs and of an intent to destroy the same. *Patrick v. State*, 219 Ga. App. 888, 889 (467 SE2d 211) (1996). Investigator Moore first conducted a nonintrusive pat-down of the surface of the defendant's clothing, only searching the defendant's pocket after feeling what he suspected was a possible knife.

> In evaluating an intrusive search of a suspect by a police officer to investigate or eliminate a threat to his [or her] safety, the issue is whether, balancing the officer's need to search against the intrusion of personal security which the search entails, the officer's actions were reasonable under the circumstances. *Hayes* [*v. State*, 202 Ga. App. 204, 206 (414 SE2d 321) (1991)]; *Terry* [*v. Ohio*, supra] at 18-22.

*Thomas v. State,* supra at 175.

Investigator Moore first felt what he believed was a knife in defendant's pocket as the defendant denied having a weapon. When confronted with this by Investigator Moore, the defendant admitted he had a knife. Under these circumstances, we conclude that Investigator Moore acted reasonably in conducting the protective search of defendant's pocket, and no Fourth Amendment violation resulted upon his initial discovery of methamphetamine in the pocket in addition to the knife. Probable cause to place the defendant under arrest having arisen at that point, the further search of defendant's pocket and the seizure of the second baggie of methamphetamine were likewise lawful as pursuant to a valid search incident to his arrest, although the defendant was formally placed under arrest immediately thereafter. *Thomas v. State,* supra at 175. In light of the foregoing, we need not address the defendant's remaining arguments that his was an arrest de facto not supported by probable cause[3] and that

---

[3] "What is intended to be an investigatory detention can be transformed into a de facto

the search of his pocket exceeded the permissible scope of a pat-down search.

Having found that articulable suspicion supported the defendant's detention, that the limited pat-down search conducted of defendant's person was properly limited, and that probable cause supported his arrest, we affirm the judgment of the superior court denying his motion to suppress.

*Judgment affirmed. Andrews, P. J., and Miller, J., concur.*

DECIDED AUGUST 8, 2001.

*McDonald & Cody, Douglas W. McDonald, Jr.,* for appellant.

*Lydia J. Sartain, District Attorney, Alison W. Toller, Assistant District Attorney,* for appellee.

---

arrest by the means of detention employed. See *Florida v. Royer,* 460 U. S. 491, 502-503 (103 SC 1319, 75 LE2d 229) (1983)." *Holsey v. State,* 271 Ga. 856, 861 (6) (524 SE2d 473) (1999).