A97A2034. JOHNSON v. THE STATE.
(496 SE2d 785)

SMITH, Judge.

Willie Gene Johnson was indicted on charges of possession of cocaine with intent to distribute, OCGA § 16-13-30 (b), and obstruction of or hindering a law enforcement officer, OCGA § 16-10-24. A jury found Johnson guilty on the cocaine charge but acquitted him on the charge of obstruction. This appeal follows the denial of his motion for a new trial.

The evidence of record shows that on March 11, 1996, Agent Jesse Hambrick, a narcotics investigator assigned to the Coweta Judicial Circuit Drug Task Force, received details of a confidential informant's tip pertaining to Johnson that originally had been given to his fellow investigator, Sergeant Tony Johnson. Hambrick testified that he had arranged with the informant to call Sergeant Johnson should the informant be unable to reach Hambrick. According to Hambrick, the informant had told Sergeant Johnson that Willie Gene Johnson (known as Peek-A-Boo) was in possession of a quantity of crack cocaine stored in a small pill bottle; that Johnson was driving a bluish-green 1980 Dodge van with tag number TJK 346; and that Johnson was currently parked in "The Crack," an area of Villa Rica known for its drug activity. Although the record is unclear as to how the informant received this information about Johnson, Hambrick testified that this same informant had provided reliable information in the past that had led to arrests and/or seizures of drugs on at least three separate occasions during the past six months.

After receiving the details of the tip from Sergeant Johnson,

Hambrick dispatched several police officers to the area described by the informant, but they were unable to locate the van. About three to four hours after learning the details of the tip, Hambrick himself then went to the area and saw a van fitting the description sitting in the middle of the street. He saw Johnson, whom he recognized from a previous drug investigation, as well as another passenger inside the van. After Johnson exited the van upon Hambrick's request, the officer patted him down and found no contraband. When Johnson refused to consent to a search of the van, Hambrick told him he would be detained until he could get a search warrant or have a canine perform a free-air search. Johnson was told that although he was not under arrest, he still was not free to leave or approach his vehicle until the investigation was concluded.

A canine unit was called to the scene. While the officers were awaiting its arrival and after Johnson had been told he was being detained, Johnson ran toward his van, opened the passenger's side door, reached in, and tried to grab a brown paper bag in which the cocaine was later found. These acts and a subsequent struggle with several officers led to Johnson's arrest for obstruction of an investigation.

The canine unit arrived approximately fifteen minutes after Hambrick's request. A dog performed an air search around the van and indicated on the driver's side door that narcotics were inside the van. The officers then placed the dog inside the van, where in Hambrick's words, the dog began "indicating all over the inside of the vehicle." The van was then searched, and eighty-five hits of crack cocaine were found packaged in three separate containers, including a small pill bottle, a plastic bag, and a plastic container. The hits of cocaine found in the container were individually packaged in tiny plastic ziplock bags.

1. In his first enumeration of error, Johnson argues the trial court erred by denying his motion to suppress evidence because the officers did not have reasonable suspicion to detain him or probable cause to conduct a warrantless search of his vehicle.

In determining the validity of a search that is deemed valid after a suppression hearing, the trial evidence is also considered. *O'Donnell v. State,* 200 Ga. App. 829, 830 (1) (409 SE2d 579) (1991). In addition, " '[a] trial court's order on a motion to suppress will not be disturbed if there is any evidence to support it, and the trial court's decision with regard to questions of fact and credibility must be accepted unless clearly erroneous.' [Cit.]" *Staley v. State,* 224 Ga. App. 806 (1) (482 SE2d 459) (1997).

Our first step is to consider whether the officers were authorized to conduct the initial investigatory questioning of Johnson based upon the tip they received from the confidential informant earlier

that day. The initial stop of Johnson can be described as a *Terry*-type stop (see *Goodman v. State*, 210 Ga. App. 369, 370 (436 SE2d 85) (1993)), and the standard for such an investigatory stop has been set forth repeatedly. "Although an officer may conduct a brief investigative stop of a vehicle, such a stop must be justified by specific, articulable facts sufficient to give rise to a reasonable suspicion of criminal conduct, *Terry v. Ohio*, 392 U. S. 1, 27 (88 SC 1868, 1883, 20 LE2d 889, 909) (1968)[.] Investigative stops of vehicles are analogous to *Terry*-stops and are invalid if based upon only unparticularized suspicion or 'hunch[.]' An investigatory stop must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity. This suspicion need not meet the standard of probable cause, but must be more than mere caprice or a hunch or an inclination." (Citations and punctuation omitted.) *Jorgensen v. State*, 207 Ga. App. 545, 546 (428 SE2d 440) (1993). " '[A] founded suspicion is all that is necessary, some basis from which the court can determine that the detention was not arbitrary or harassing. (Cit.)' [Cit.]" *State v. McFarland*, 201 Ga. App. 495, 496 (411 SE2d 314) (1991).

The application of these legal principles to the facts of this case leads us to conclude that Hambrick had a reasonable suspicion sufficient to authorize the brief investigatory stop of Johnson. The Coweta Drug Task Force had received information from a reliable informant that Johnson was in possession of a quantity of cocaine stored in a small pill bottle. The Task Force also had been given the make, model and tag number of the vehicle Johnson was driving along with the location where the van could be found. Further, Hambrick, who was familiar with Johnson from a previous drug investigation, personally observed Johnson just a few hours later inside a van meeting the description provided by the informant and in the location provided by the informant. Assuming without deciding that the information received from this informant was insufficient to establish probable cause to search Johnson's vehicle, we find that the adequately corroborated report of the reliable informant would, at a minimum, provide an articulable suspicion, justifying an investigative stop and brief detention of Johnson. See *Goodman v. State*, supra at 370; *Jones v. State*, 195 Ga. App. 868, 869 (2) (395 SE2d 69) (1990); *West v. State*, 194 Ga. App. 620, 621 (391 SE2d 673) (1990).

Hambrick's receipt of the informant's tip through a police intermediary does not affect the outcome of this case. "Information obtained by police officers engaged in an investigation may be used by another officer common to that investigation as a reliable basis for the establishment of probable cause. In cases where an informant supplies the information to one officer who then relays it to a fellow officer, the question has revolved around the reliability of the infor-

mant. Where the informant is found to be reliable, probable cause for the non-receiving officer to search exists." (Citations and punctuation omitted.) *Beck v. State*, 216 Ga. App. 532, 534 (455 SE2d 110) (1995). We also find the delay between the time when the tip was received by Sergeant Johnson and the time when Johnson's van was located by Hambrick to be insignificant under the circumstances of this case. See generally *Rider v. State*, 222 Ga. App. 602, 603 (475 SE2d 655) (1996); *Pittman v. State*, 208 Ga. App. 211, 218 (7) (430 SE2d 141) (1993).

Having established that Hambrick had an articulable suspicion that Johnson was in possession of drugs in his vehicle, we also find that he was authorized to use a canine to perform a free-air search around the vehicle to see whether the dog detected evidence of narcotics. See *State of Ga. v. Montford*, 217 Ga. App. 339, 340-341 (1) (457 SE2d 229) (1995) (use of drug detection dog to sniff exterior of vehicle is not unreasonable search within meaning of U. S. or Georgia Constitution). "When the dog alerted for drugs, that factor, combined with the factors prompting the use of the drug dog in the first instance, established probable cause for [Hambrick] to believe [Johnson] was in possession of illegal drugs within his vehicle, authorizing the subsequent search of its interior." (Citation omitted.) Id. at 341. Compare *Simmons v. State*, 223 Ga. App. 781, 782 (2) (479 SE2d 123) (1996) (no reasonable suspicion of drug activity to support narcotics detection dog's "walk around" defendant's vehicle when defendant initially stopped for speeding rather than suspicion of drug activity).

We reject Johnson's argument that his detention for some fifteen minutes exceeded the period of time allowable for a *Terry*-type stop. See *Goodman v. State*, supra at 371 (detention of defendant in back seat of patrol car for ten to fifteen minutes held within duration of *Terry* seizure). See also *State v. Corbett*, 205 Ga. App. 554, 556 (423 SE2d 38) (1992).

We also note that Johnson's refusal to stand back from his vehicle, his lunge toward his vehicle, and his subsequent arrest for obstruction of an officer provided additional grounds to justify a warrantless search of his vehicle. See, e.g., *Anthony v. State*, 197 Ga. App. 297, 298 (1) (398 SE2d 580) (1990). Accordingly, the trial court did not err in denying Johnson's motion to suppress evidence.

2. In his second enumeration of error, Johnson challenges the sufficiency of the evidence to authorize a finding of intent to distribute. We disagree. "To support a conviction for possession of cocaine with intent to distribute, the State is required to prove more than mere possession." (Citations and punctuation omitted.) *Williams v. State*, 199 Ga. App. 544 (405 SE2d 539) (1991). In this case, the evidence shows that eighty-five individual hits of crack cocaine were found in Johnson's vehicle, many of which were packaged in

tiny ziplock plastic bags. This evidence, along with Hambrick's testimony that this manner of packaging was commonly associated with the sale or distribution of such contraband, was sufficient to authorize the jury's finding, beyond a reasonable doubt, that Johnson committed the offense of possession of cocaine with intent to distribute. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). See also *Williams v. State*, supra at 545.

*Judgment affirmed. McMurray, P. J., and Beasley, J., concur.*

DECIDED FEBRUARY 11, 1998.

*Word & Simmons, Gerald P. Word*, for appellant.

*Peter J. Skandalakis, District Attorney, Kevin W. Drummond, Assistant District Attorney*, for appellee.