## A98A2113. USHER v. THE STATE.
### (512 SE2d 380)

SMITH, Judge.

Steven Usher was indicted on four counts of violation of the Georgia Controlled Substances Act by selling cocaine, one count of trafficking in cocaine, and one count of possession of a firearm by a convicted felon. The State entered a nolle prosequi on two of the counts of selling cocaine, and Usher pled guilty to the count of firearm possession. At trial, a jury convicted him of trafficking in cocaine and the remaining two counts of selling cocaine. His motion for new trial as amended was denied, and he appeals. Finding no error, we affirm.

1. Usher asserts the general grounds. Construed in favor of the jury's verdict, the evidence shows that Usher made two sales of cocaine to a confidential informant. On May 14, 1996, the confidential informant was searched for money and drugs, then given a remote microphone or "body bug" and a sum of money.[1] Meanwhile, other officers were observing the area from concealed positions on the ground and from the air.

An officer in an airplane watched through binoculars as the informant stopped at a garage, picked up a black male in a light-colored shirt, and drove to a house known as "the kitchen" at 220 Jackson Road in Henry County. There, the passenger got out of the vehicle and went into the woods, emerging three or four minutes

---

[1] The "body bug" did not function properly during either transaction.

later with a "white-colored bag in his hands." Both individuals went into the house for a few moments; then the informant came back to his vehicle and left the area. The officer observed the informant's vehicle until other officers made contact with him.

The ground surveillance officer identified Usher as the man he saw leave the truck, walk in the direction of the woods, walk up the steps of the house with a light-colored bag, and hand something to the driver of the truck. A videotape of this surveillance was played for the jury. The informant returned to the monitoring officers and turned over a quantity of cocaine. The informant told the monitoring officers he had purchased the cocaine from Usher.

On May 17, 1996, the police supplied the informant with money that had been photocopied to record its serial numbers. The informant paged Usher, met him at a food store, and followed him back to "the kitchen." He returned with a quantity of cocaine, which he delivered to the officers.

On May 23, 1996, after obtaining a warrant, officers searched "the kitchen" and Usher's nearby residence at 241 Jackson Road. An officer conducting surveillance saw a man he identified in court as Usher leave "the kitchen" with a light-colored package in his hand and go into nearby woods. A videotape made by this officer was played for the jury. A second officer on aerial surveillance saw an individual with a light brown bag enter the woods and "put something into the brush." No other person entered or left that area before the first officer was able to point the location out to officers executing the search warrant. They discovered there a bag containing suspected cocaine. A well-traveled trail with a footbridge ran from within five feet of the point at which the drugs were found to Usher's residence. Officers searching Usher's residence found a gym bag containing $35,135 in cash in a compartment under a table. The cash included 17 of the photocopied bills delivered to the confidential informant.

The informant appeared at trial and recanted his earlier statements to police, contending that he did not purchase cocaine from Usher but from another unidentified individual "that had purchased four and a half ounces from him." He contended that he gave the identified currency to Usher in payment for "some transmission work." But he testified that he gave the currency to Usher on May 14, while the officers testified that the identified currency was used on May 17.

The informant acknowledged, however, that he picked up Usher in his truck on May 14 and followed him to "the kitchen" on May 17. He also testified that he "pulled [his] shirt up to let Mr. Usher know that I wasn't wired up," and that he went to the house to purchase cocaine from Usher. He acknowledged that he told the officers on

both occasions that he had purchased the cocaine from Usher, but contended that he lied. On further questioning, he repeatedly stated that he could not remember any additional details of his visits to "the kitchen."

"[A] prior inconsistent statement of a witness who takes the stand and is subject to cross-examination is admissible as substantive evidence." *Gibbons v. State,* 248 Ga. 858, 862-864 (286 SE2d 717) (1982). "If, from all that the jury see of the witness, they conclude that what he says now is not the truth, but what he said before, they are none the less deciding from what they see and hear of that person and in court. There is no mythical necessity that the case must be decided only in accordance with the truth of words uttered under oath in court." (Citation and punctuation omitted.) Id. at 864. The jury was authorized to believe the informant's earlier inculpatory statements rather than his present exculpatory testimony. These statements, in combination with the multiple observations of Usher's behavior during the "controlled buys," the discovery of contraband near a well-beaten path to his house after he was observed placing an object there, and the discovery of identified currency in his house, were sufficient to authorize a rational trier of fact to find him guilty of the offenses charged beyond a reasonable doubt under *Jackson v. Virginia,* 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). See *Flanders v. State,* 230 Ga. App. 316, 317-318 (1) (496 SE2d 344) (1998).

2. Usher contends the trial court erred in denying his motion to suppress the evidence obtained by the search of his residence pursuant to a warrant, contending the affidavit did not set forth sufficient probable cause. He contends that some of the information was stale, that the affiant's testimony was merely conclusory, and that the description of the items sought under the warrant was so broad it constituted a "general warrant." These contentions are without merit.

"A general warrant is of course void. By definition it is one which does not sufficiently specify the place or the person to be searched. A search warrant is not invalid for want of description of the premises to be searched if the description sufficiently permits a prudent officer executing the warrant to locate the premises, person or property definitely and with reasonable certainty, and without depending upon his discretion. If a search warrant, read as a whole, points out the premises, person or property to the exclusion of all others, and on inquiry leads the officers unerringly to them, it meets the description requirement." (Citations and punctuation omitted.) *Minter v. State,* 206 Ga. App. 692, 693 (1) (426 SE2d 169) (1992).

In the present case, the search warrant described the property to be searched by address and physical description. It listed 17 specific categories of items believed to be located on the premises, including

"United States currency, specifically monies belonging to the Henry County Police Department, see attached Exhibit 'A', which were used to conduct controlled narcotics purchases." "This warrant sufficiently points out the premises to be searched and names the type of property to be seized." *Conrad v. State*, 217 Ga. App. 388, 390 (2) (457 SE2d 592) (1995) (warrant describing " '[m]ethamphetamine, other drugs/controlled substances, and other items indicative of the sale/ distribution of controlled substances/dangerous drugs which are being possessed in violation of Georgia Law' " sufficient). Compare *Dobbins v. State*, 262 Ga. 161, 164 (3) (415 SE2d 168) (1992) (warrant leaving determination of whether described items were " 'of a pornographic nature' " entirely to officers' discretion invalid).

The affidavit supporting the warrant described in considerable detail the affiant's factual investigation into cocaine sales conducted by Usher, including the extensive surveillance described above and four "controlled buys" other than those for which Usher was indicted. This information was obviously factual and not conclusory. Even if the affidavit contained some stale information, that alone did not invalidate the warrant. *Brannon v. State*, 220 Ga. App. 572, 575 (3) (469 SE2d 716) (1996).

3. Usher also contends the trial court erred in admitting evidence of similar transactions. "Similar transactions need not be identical to the crime charged to be admissible. Rather, the evidence must show that the defendant committed the other crimes and that sufficient similarity between the crime charged and the prior crimes exists, so that proof of the former tends to prove the latter." (Citations and punctuation omitted.) *Hammonds v. State*, 218 Ga. App. 423, 425 (4) (461 SE2d 589) (1995). The State offered evidence that Usher pled guilty to charges arising from the sale of cocaine to a private individual in two other "controlled buys" under the supervision of Henry County authorities. On one occasion, there was a rendezvous and "pick up" in a vehicle, as in the May 14 incident in this case; on the other occasion, the participants met at a public place, as in the May 17 incident. The fact that these sales of cocaine occurred approximately eight years earlier does not render them inadmissible. *Gilstrap v. State*, 261 Ga. 798, 799 (1) (b) (410 SE2d 423) (1991) (lapses of 11 and 19 years do not demand inadmissibility). This is particularly true when a portion of that time was spent in confinement. *Gonzalez v. State*, 213 Ga. App. 667, 668 (1) (445 SE2d 769) (1994). The trial court did not err in admitting evidence of the similar transactions.

4. Relying on *Hinson v. State*, 229 Ga. App. 840, 842 (3) (494 SE2d 693) (1997), and *Belt v. State*, 227 Ga. App. 425 (1) (489 SE2d 157) (1997), Usher contends that the trial court erred in failing to give a sua sponte limiting instruction contemporaneously with the

introduction of similar transaction evidence. But this issue has now been decided adversely to Usher in the Supreme Court of Georgia's decisions in *State v. Belt*, 269 Ga. 763 (505 SE2d 1) (1998), and *State v. Hinson*, 269 Ga. 862 (506 SE2d 870) (1998), reversing this court's decisions in *Hinson v. State* and *Belt v. State* and holding that absent a request, it is not reversible error to fail to give a similar transaction limiting instruction.

*Judgment affirmed. Johnson, C. J., and Barnes, J., concur.*

DECIDED FEBRUARY 17, 1999 —
RECONSIDERATION DENIED FEBRUARY 26, 1999 — 

*Virgil L. Brown & Associates, Bentley C. Adams III*, for appellant.

*Tommy K. Floyd, District Attorney, Thomas R. McBerry, James L. Wright III, Assistant District Attorneys*, for appellee.