A00A1927. CRENSHAW v. THE STATE.
(546 SE2d 890)

RUFFIN, Judge.

A jury found Earnest Crenshaw guilty of trafficking in cocaine. On appeal, Crenshaw challenges the sufficiency of the evidence. Crenshaw also contends that the trial court erred in denying his motion to suppress; that the trial court erred in admitting similar

transaction evidence; and that he received ineffective assistance of counsel. For reasons discussed below, we affirm.

1. Viewed in a light most favorable to the jury's verdict,[1] the evidence shows that on the afternoon of November 19, 1998, Crenshaw was driving a rented Nissan Altima with Florida tags and Keiyatta Smith, a long-time friend of Crenshaw's, was in the passenger seat. Deputy William Waterson noticed that neither Crenshaw nor Smith was wearing a seat belt, and he initiated a traffic stop.

At Waterson's request, Crenshaw produced a Florida driver's license and a car rental agreement. Although Crenshaw was listed as a driver, the rental agreement was in someone else's name, and it had expired. Waterson decided not to ticket Crenshaw for the seat belt violation, but he detained him in order to check on the status of the rental agreement to ascertain whether it had been extended.

While waiting for a response from the car rental agency, Waterson had a drug dog perform a free air search around the exterior of the car. Upon reaching the driver's side, the dog, with no prompting from its handler, jumped through the open car window and began "really alerting a lot inside the vehicle." The dog was quickly removed from the vehicle, and the deputies recommenced the free air search around the car. The dog alerted again on the passenger door. In an apparent attempt to explain the dog's behavior, Crenshaw volunteered that he had smoked marijuana that morning. Following this revelation, the deputies searched the car and found a bag containing 240.3 grams of cocaine. Both Crenshaw and Smith were charged with trafficking in cocaine.

Smith pled guilty and, at Crenshaw's trial, testified on Crenshaw's behalf. Smith acknowledged that rental cars often are used in trafficking cocaine. And, although Smith admitted that Crenshaw had arranged the car rental, Smith claimed that Crenshaw did not know about the cocaine in the car, which Smith claimed belonged only to him.

To refute Smith's claim that Crenshaw did not know about the cocaine, the State presented evidence of a prior transaction involving Crenshaw. Carl Lounge, a police officer from St. Petersburg, Florida, testified that in June 1991, he responded to a complaint that someone was shooting birds. When Lounge arrived at the house where the alleged shooting took place, he was met by Crenshaw and another man. During the course of his investigation, Lounge saw what appeared to be a beaker full of crack cocaine. Lounge then obtained a search warrant and, in executing the warrant, discovered 370 grams of crack cocaine, $6,800, 4,000 razor blades, and several thousand

---

[1] See *Tanner v. State*, 243 Ga. App. 640, 641 (533 SE2d 794) (2000) (standard of review).

plastic baggies. As a result of this incident, Crenshaw pled guilty to trafficking in cocaine.

Based on this evidence, the jury found Crenshaw guilty of trafficking in cocaine. Under OCGA § 16-13-31 (a) (1), any person "who is knowingly in possession of 28 grams or more of cocaine" is guilty of trafficking in cocaine. Here, the record shows that Crenshaw arranged to rent the car in which the drugs were found and that rental cars are commonly used in the drug trade. In addition, after the drug dog alerted on the car, Crenshaw volunteered that he had smoked marijuana that day. Such a self-incriminating explanation creates an inference that Crenshaw was attempting to divert the deputies from further investigation, which, in turn, implies that Crenshaw knew about the drugs. Finally, the evidence that Crenshaw had trafficked in cocaine in the past demonstrates his bent of mind. Accordingly, based upon the totality of the evidence, the jury was authorized to conclude that Crenshaw was guilty of the offense charged.[2]

Crenshaw argues that the evidence was insufficient because other people had access to the rental car. Although the owner or driver of a car in which drugs are found "is presumed to have possession and control of [the] contraband found in the automobile,"[3] such presumption may be rebutted by evidence that others had equal access to the car.[4] Here, Crenshaw points to evidence that Smith had equal access to the car. We note, however, that Smith and Crenshaw were both charged with knowing possession of 28 grams or more of cocaine.[5] And equal access provides no defense where, as here, the evidence shows that the person who had equal access was in joint constructive possession of the contraband.[6] To the extent that Crenshaw relies upon Smith's "sworn" testimony that the cocaine was his alone, the jury was not required to believe Smith's revelation at trial that the cocaine was his.[7]

2. Prior to trial, Crenshaw unsuccessfully moved to suppress evidence of the cocaine found in the car, arguing that it was the fruit of an illegal search. In two enumerations of error, Crenshaw asserts that the trial court erred in denying his motion to suppress.

In response, the State argues that Crenshaw waived his right to appellate review of this issue by conceding to the admissibility of the evidence at trial. In his pre-trial motion, Crenshaw argued that the

---

[2] See *Brown v. State*, 245 Ga. App. 706, 708-709 (2) (538 SE2d 788) (2000).

[3] *Hendrix v. State*, 199 Ga. App. 599, 600 (1) (405 SE2d 576) (1991).

[4] See id.

[5] See *Wells v. State*, 237 Ga. App. 109, 111 (1) (514 SE2d 245) (1999) (" 'two or more persons may be convicted of possession of the same contraband' ").

[6] See *Reed v. State*, 244 Ga. App. 146, 147 (534 SE2d 871) (2000).

[7] See *Tran v. State*, 246 Ga. App. 153, 159 (6) (539 SE2d 862) (2000).

cocaine evidence should be excluded because Waterson exceeded the scope of his lawful authority in detaining him after issuing the written warning for the seat belt violation. When the evidence was admitted at trial, however, Crenshaw's attorney said that his only objection was "that the writing on the outside [of the exhibit] has my client's name on it. I don't have any problem with them tendering that specific exhibit, just not with the writing on it."

When a motion to suppress has been filed, merely failing to object to the admission of the evidence does not constitute a waiver of the grounds asserted in the motion.[8] However, *"affirmatively stating there is no objection in effect concedes the point."*[9] Thus, by stating that the only problem with the evidence was the writing on the bag, Crenshaw conceded to its admission on all other grounds.[10]

3. In two enumerations of error, Crenshaw maintains that the court erred in admitting the similar transaction evidence.[11] According to Crenshaw, the trial court erroneously concluded that the evidence was admissible to establish his bent of mind. Crenshaw also asserts that the trial court failed to ascertain whether the probative value of the evidence outweighed its prejudicial impact.

In order to be admissible, similar transactions do not need to be identical to the crime charged.[12] "Rather, the evidence must show that the defendant committed the other crimes and that sufficient similarity between the crime charged and the prior crimes exists, so that proof of the former tends to prove the latter."[13] Such evidence may be admitted to establish motive, intent, plan, identity, bent of mind, or course of conduct.[14]

During the hearing on Crenshaw's motion to suppress, the trial court stated that the prior transaction was "not similar so much in terms of true factual similarity, but it shows that bent of mind, that knowledge, that lure of easy money." On appeal, Crenshaw argues that the lure of easy money is not an appropriate purpose for admitting similar transaction evidence. Thus, he maintains, the trial court should have excluded the evidence. What Crenshaw fails to acknowledge, however, is that the trial court clearly stated that it was admitting the evidence to establish Crenshaw's bent of mind — to demon-

---

[8] See *Carter v. State*, 238 Ga. App. 708, 709 (1) (520 SE2d 15) (1999).

[9] (Punctuation omitted; emphasis in original.) Id.

[10] See id.; see also *Mattingly v. State*, 205 Ga. App. 777 (1) (423 SE2d 709) (1992).

[11] The State contends that Crenshaw waived this argument by failing to object at trial. However, Crenshaw filed a motion in limine to exclude the evidence, and when such motion has been filed, a defendant does not need to renew his objection at trial to preserve the issue on appeal. See *Reno v. Reno*, 249 Ga. 855 (1) (295 SE2d 94) (1982); see also *Chastain v. State*, 239 Ga. App. 602, 605 (2) (521 SE2d 657) (1999).

[12] See *Usher v. State*, 236 Ga. App. 663, 666 (3) (512 SE2d 380) (1999).

[13] (Punctuation omitted.) Id.

[14] *Jackson v. State*, 246 Ga. App. 133, 134-135 (2) (539 SE2d 849) (2000).

strate that he knew the cocaine was in the car, which is a proper purpose for its admission.[15]

To the extent that Crenshaw suggests that the prior transaction was not sufficiently similar, we note that

> [t]he issue of admissibility of extrinsic transactions has never been one of mere similarity. It is, rather, relevance to the issues in the trial of the case. Depending upon the purpose for which the extrinsic evidence is offered, e.g., where similar transaction evidence is offered to prove identity, the state may be required to prove a high degree of similarity between relevant characteristics of the extrinsic offenses and the charged crimes, or it may only have the burden of showing a logical connection between crimes which are essentially dissimilar. When similar transaction evidence is being introduced to prove motive, intent, or bent of mind, it requires a lesser degree of similarity to meet the test of admissibility than when such evidence is being introduced to prove identity.[16]

On appeal, we focus on the similarities between the offenses rather than the differences.[17] In so doing, we note that, in both offenses, Crenshaw was discovered with one other individual and enough cocaine to constitute the offense of trafficking. Where, as here, the sole issue is whether Crenshaw knew about the cocaine in the car, the evidence that he had previously pled guilty to trafficking was clearly relevant in establishing his bent of mind.[18] Accordingly, the trial court did not err in admitting evidence of the similar transaction for this purpose.

Additionally, we find no error in the trial court's failure to expressly state that the probative value of the similar transaction evidence outweighed its prejudicial impact. In determining that the evidence was relevant, the trial court necessarily concluded that its probative value outweighed any prejudicial impact,[19] and there is no legal requirement that the trial court make an express finding to this effect.[20] Thus, the trial court's failure to make such express findings provides no basis for reversal.

4. Finally, Crenshaw contends that he received ineffective assis-

---

[15] See id.

[16] (Punctuation omitted.) *Quezada v. State*, 236 Ga. App. 718, 720 (1) (512 SE2d 401) (1999).

[17] Id. at 721.

[18] See *Duque v. State*, 228 Ga. App. 391, 392-393 (491 SE2d 841) (1997).

[19] See *Sheppard v. State*, 267 Ga. 276, 280 (4) (476 SE2d 760) (1996).

[20] See *Newman v. State*, 233 Ga. App. 794, 795 (2) (504 SE2d 476) (1998).

tance based upon his attorney's failure to preserve the objections raised in his motion to suppress.[21] In order to establish a claim of ineffective assistance, Crenshaw

> must show that his counsel's performance was deficient and that the deficient performance prejudiced his defense. Prejudice exists where there is a reasonable probability the jury would have reached a different verdict, absent the error of counsel. We will affirm a trial court's finding that counsel was effective unless it is clearly erroneous.[22]

Here, Crenshaw is unable to show prejudice because the trial court did not err in denying his motion to suppress.

Where law enforcement officers stop a car, the stop must be justified by some objective manifestation that the person either is or is about to be engaged in criminal activity.[23] Although the suspicion does not need to rise to the level of probable cause, it "must be more than mere caprice or a hunch or an inclination. A founded suspicion is all that is necessary, some basis from which the court can determine that the detention was not arbitrary or harassing."[24]

In this case, Waterson initially stopped Crenshaw due to a seat belt violation, which is a legitimate reason for stopping a motorist.[25] Although Waterson decided not to ticket Crenshaw for that violation, he detained Crenshaw in order to investigate the status of the car rental agreement, which had expired. At the hearing on Crenshaw's motion to suppress, Waterson testified that he was concerned that, if Crenshaw had not renewed the rental agreement, he may have converted the car to his own use. Given that the rental agreement had, in fact, expired, Waterson had an objective reason for believing that Crenshaw may have been engaged in criminal conduct.

During the hearing on the motion to suppress, Crenshaw argued that, even if Waterson suspected the car might have been converted, he had no "right to bring a dog in. That didn't give them the right to try to trick him into contradicting himself. It didn't give him the right to hold [Crenshaw] there to investigate a drug courier profile." It is undisputed, however, that the drug dog was present while Waterson

---

[21] Crenshaw also argues that his trial counsel rendered ineffective assistance in waiving objections to the similar transaction evidence. As we found no waiver, however, this argument is unavailing. See *McGlohon v. State*, 234 Ga. App. 382, 384 (506 SE2d 886) (1998).

[22] (Punctuation and footnotes omitted.) *Watson v. State*, 243 Ga. App. 636, 637 (534 SE2d 93) (2000).

[23] *Johnson v. State*, 230 Ga. App. 535, 537 (1) (496 SE2d 785) (1998).

[24] (Citations and punctuation omitted.) Id.

[25] See OCGA § 40-8-76.1 (b); see also *Edwards v. State*, 239 Ga. App. 44, 46 (2) (518 SE2d 426) (1999).

was waiting to hear back from the car rental agency. Indeed, it appears that the drug dog was present from the outset of the traffic stop. Thus, Crenshaw was not detained for the purpose of bringing a drug dog to the scene to investigate.[26] And, because Crenshaw was validly detained, Waterson was free to have the handler walk the dog around the car, as "use of a trained drug detection dog, in a location where he is entitled to be, to sniff the exterior of a container, is not an unreasonable search."[27]

At the hearing on his motion to suppress, Crenshaw argued that the evidence should be suppressed because the drug dog was in a location where it was not entitled to be — inside the car. We note, however, that the deputies did not treat the dog's jumping into the car as probable cause for the search. Rather the dog handler removed the dog from the car without searching its interior. It was only after the dog alerted at the passenger door that the car was searched, and "the 'alert' of a trained narcotics dog, standing alone, [is] sufficient to provide probable cause."[28] Moreover, it was only after Crenshaw volunteered that he had smoked marijuana that officers searched the car.

We will not disturb a trial court's order on a motion to suppress if there is any evidence to support it, and the trial court's findings of fact will be accepted unless clearly erroneous.[29] Under the circumstances of this case, we find no error in the trial court's denial of Crenshaw's motion to suppress. Therefore, his attorney's failure to preserve the issue for appeal does not constitute ineffective assistance.[30]

*Judgment affirmed. Andrews, P. J., and Ellington, J., concur.*

DECIDED MARCH 8, 2001 — 

*Moulton & Massey, Jeremy A. Moulton,* for appellant.
*Richard R. Read, District Attorney,* for appellee.

---

[26] Compare *State v. Kwiatkowski,* 238 Ga. App. 390, 392-393 (519 SE2d 43) (1999).
[27] *O'Keefe v. State,* 189 Ga. App. 519, 526 (3) (376 SE2d 406) (1988).
[28] *State v. Folk,* 238 Ga. App. 206, 209 (521 SE2d 194) (1999).
[29] See *Johnson,* supra at 536 (1).
[30] See *Turner v. State,* 246 Ga. App. 49, 57 (6) (539 SE2d 553) (2000).