A01A2210. WARREN et al. v. THE STATE.
(561 SE2d 190)

SMITH, Presiding Judge.

This appeal marks the second appearance of this case before this court. *State v. Warren,* 242 Ga. App. 605 (530 SE2d 515) (2000). Ronnie O. Warren and Kelton Collins were indicted by a Carroll County grand jury on one count of violation of the Georgia Controlled Substances Act. Warren moved to suppress the cocaine found in his vehicle, and the trial court granted his motion, finding that the officer lacked "probable cause" for the traffic stop. The State appealed, and we reversed the trial court because the applicable standard for reviewing the propriety of a traffic stop is whether "reasonable, articulable suspicion of criminal activity" justified the stop, not the existence of "probable cause." Id. at 606. Upon remand, the trial court held that "the officers did have a reasonable, articulable suspicion of criminal activity to justify the detention and search of the defendant's vehicle." Warren and Collins were convicted after a bench trial and now appeal. Finding no error, we affirm.

A deputy K-9 officer with the Carroll County Sheriff's Office was patrolling Interstate Highway 20 when he noticed a vehicle with an Alabama tag moving westbound with its backup lights on. He stopped the vehicle for defective equipment, and the driver, Warren, explained that he had been aware of the problem since he had installed a new transmission about a month before "and just hadn't had it fixed yet." The officer planned to write Warren a warning citation "because he knew that he had this violation 30 days, at least a month prior to me stopping him," but first asked to see the vehicle registration as a matter of routine. Warren told him that it was in a

folder in the backseat. This seemed unusual to the officer, since "90 percent of the people that I've stopped on the interstate" keep their registration in the glove box of the car. He asked Warren to stay with a second deputy and K-9 officer, who had arrived "no more than a minute" after the stop, while he retrieved the registration.

When the officer approached the car and asked the passenger, later identified as Collins, to hand him the vehicle registration, he noted that the passenger was "extremely nervous"; he would not look at the officer or acknowledge him in any way, and when he opened the folder he began dropping papers on the floor and picking them up again. The officer testified that Collins was unusually nervous for a passenger; he described him as "freaked out." He asked where Warren and Collins were coming from, and Collins responded, " 'I don't know, you'll have to ask him.' "

He returned to Warren and asked him who the passenger was, and Warren identified him as his cousin. The officer asked Warren if he could search the vehicle, and Warren responded that the officer "could do a plain view search, but [he] couldn't open anything." His suspicions further aroused by this use of legal language, the officer asked the second deputy to perform an "exterior free air sniff of the vehicle" with his drug dog. At this time, only two to three minutes had elapsed since the initial stop. As the dog began the search, Warren offered to allow the officer to search his luggage in the trunk. The dog alerted at the driver's side door, and the first officer searched the vehicle. The glove compartment was locked; the officer obtained the key and found a brown paper bag containing suspected powdered cocaine. The parties stipulated that the substance was 120.5 grams with a yield of 77 percent concentration cocaine.

1. Warren and Collins raise the general grounds. Both rely upon the "equal access rule," contending that the State failed to prove that either of them possessed the cocaine found in the locked glove compartment of the car. But the "equal access" rule has no application here.

> The rule, as it applies in the automobile context, is merely that evidence showing that a person or persons other than the owner or driver of the automobile had equal access to contraband found in the automobile may or will, depending upon the strength of the evidence, overcome the presumption that the contraband was in the exclusive possession of the owner or driver. The rule, conceptually and historically, has no application where, as here, all persons allegedly having equal access to the contraband are alleged to have been in joint constructive possession of that contraband. . . . By showing circumstantially that each of the defendants had

equal access to the drugs, the state was able to support its theory that all of the defendants were parties to the crime and thus guilty of joint constructive possession of the drugs.

(Citations and punctuation omitted.) *Castillo v. State*, 166 Ga. App. 817, 821-822 (2) (305 SE2d 629) (1983).

Possession of contraband may be actual or constructive. Moreover, joint constructive possession with another will sustain a conviction for possession of contraband. A person who knowingly has direct physical control over a thing at a given time is in actual possession of it. A person who, though not in actual possession, knowingly has both the power and intention at a given time to exercise dominion or control over a thing is then in constructive possession of it. The law recognizes that possession may be sole or joint. If one person alone has actual or constructive possession of a thing, possession is sole. If two or more persons shared actual or constructive possession of a thing, possession is joint.

(Citations and punctuation omitted.) *Allen v. State*, 191 Ga. App. 623, 624 (2) (382 SE2d 690) (1989).

This is not a case in which only a passenger in a vehicle was charged with possession of the contraband while the driver was not charged, as in *Mitchell v. State*, 268 Ga. 592 (492 SE2d 204) (1997), relied upon by Warren and Collins. In such cases, the State is required to prove *sole* constructive possession by fewer than all the occupants of the vehicle. See *Reid v. State*, 212 Ga. App. 787, 788, n. 1 (442 SE2d 852) (1994). Nor is this a case in which one occupant has actual possession of the contraband, and the State must prove constructive possession by the other occupant or occupants of the car. See, e.g., *Shirley v. State*, 166 Ga. App. 456 (1) (304 SE2d 468) (1983).

Here, construed in favor of the judgment of conviction, the evidence shows that Warren exercised control over the car not only by possession of the keys but by acknowledging that he had performed transmission work on the car approximately one month earlier; Collins for his part acted in an extremely nervous fashion when asked to provide the vehicle registration. Both Warren and Collins gave unusual responses to the questions put to them by the officer. Warren's and Collins's "intent to exercise control over the contraband can be inferred by the suspicious and inconsistent explanations [they] gave to the [officer] before he conducted the search." *Allen*, supra at 625. Moreover, some evidence was presented that Warren and Collins were cousins, and "where transactions involving relatives are under review, slight *circumstances are often sufficient to induce a belief*

that there was collusion between the parties." (Citations and punctuation omitted.) *Shropshire v. State*, 201 Ga. App. 421, 422 (411 SE2d 339) (1991). This evidence was sufficient to show joint constructive possession and met the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Appellants also challenge the denial of their motion to suppress. "When a motion to suppress is heard by a trial judge, that judge sits as the trier of facts and his findings will not be disturbed if there is any evidence to support them. The reviewing court must construe the evidence most favorably to uphold the trial court's findings and judgment." (Footnotes omitted.) *Gordon v. State*, 242 Ga. App. 50, 51 (528 SE2d 838) (2000).

As we noted in *Warren*, supra, "improperly activated backup lights would violate OCGA § 40-8-26 (b)'s requirement that 'other signal lights . . . shall at all times be maintained in good working condition.' " Id. at 606. While Warren and Collins claim that the officer's investigation had concluded as soon as he initially spoke with Warren about the lights, the officer testified that he intended to write Warren a warning ticket because he had allowed the defective equipment to go unrepaired for a month. And "an officer conducting a routine traffic stop may request and examine a driver's license and vehicle registration and run a computer check on the documents." (Citations and punctuation omitted.) *Sutton v. State*, 223 Ga. App. 721, 723 (1) (478 SE2d 910) (1996). His inquiries of Collins regarding the pair's itinerary while he was attempting to obtain the registration were also permissible. *Pitts v. State*, 221 Ga. App. 309, 311 (2) (471 SE2d 270) (1996). The request to search was made immediately after this encounter, and neither the request nor the questioning of the passenger unreasonably prolonged the detention. *Stovall v. State*, 251 Ga. App. 7, 8 (1) (553 SE2d 297) (2001).

Unlike the driver in *State v. Kwiatkowski*, 238 Ga. App. 390, 391 (519 SE2d 43) (1999), upon which Warren and Collins rely, Warren did not absolutely refuse permission to search his car but instead consented to a "plain view search" and then to a search of his luggage. The dog was already present on the scene, and Warren and Collins therefore were "not detained for the purpose of bringing a drug dog to the scene to investigate." (Footnote omitted.) *Crenshaw v. State*, 248 Ga. App. 505, 511 (4) (546 SE2d 890) (2001). The drug dog's "exterior free air sniff" of the vehicle did not "open anything" as forbidden by Warren in his consent to search and "did not intrude into the interior" of the car. *O'Keefe v. State*, 189 Ga. App. 519, 526 (3) (376 SE2d 406) (1988). Contrary to appellants' contention, "[w]e previously have found the 'alert' of a trained narcotics dog, standing alone, sufficient to provide probable cause for the search of a vehicle. [Cits.]" *State v. Folk*, 238 Ga. App. 206, 209 (521 SE2d 194) (1999).

Warren and Collins also complain that inadequate evidence was presented of the drug dog's training.

> [E]vidence that the dog has been trained and certified as a drug detection dog constitutes prima facie evidence of its reliability for purposes of a probable cause determination. Although a defendant may try to attack the dog's reliability by showing that it was not properly trained or that it has been unreliable in the past, such evidence presents an issue of fact for the trial court, and its decision must be accepted on appeal unless clearly erroneous. [Cit.]

*Dawson v. State*, 238 Ga. App. 263, 267 (1) (518 SE2d 477) (1999).[1] The officer who handled the drug detection dog testified to his training and the dog's training and certification by the Villa Rica Police Department and three state and national testing bodies. Warren and Collins exhaustively cross-examined both deputies, establishing that their knowledge was limited regarding the physiological, psychological, and biological bases for the dog's response to drug odor, but the weight to be given that evidence was for the trier of fact. Id. Although Warren's counsel elicited from the officer that he did not keep records of "every time you take this dog out and have him sniff a suspect or a suspect's car," the officer did keep records of his training, which were supplied to defense counsel. The officer also testified that he had never seen his dog give a false alert on a car door. Considering not only the dog's alert but the "totality of the circumstances," including Warren's and Collins's "behavior, demeanor, and responses to the officers' questions, the trial court did not err in denying [their] motion to suppress." *Rivera v. State*, 247 Ga. App. 713, 715 (1) (545 SE2d 105) (2001).

*Judgment affirmed. Barnes and Phipps, JJ., concur.*

DECIDED FEBRUARY 26, 2002 — 

*Kam & Ebersbach, Michael G. Kam, Rader & Cooke, Valerie C. Cooke*, for appellants.

---

[1] Warren and Collins rely upon *Carr v. State*, 267 Ga. 701 (482 SE2d 314) (1997), overruled on other grounds, *Clark v. State*, 271 Ga. 6, 10 (5) (515 SE2d 155) (1999), to argue that the use of drug detection dogs is not scientifically reliable. But *Carr* holds that the use of a dog to detect the odor of accelerants at a fire scene is not *substantive evidence* of the presence of accelerants without evidence of scientific verifiability. The decision explicitly contrasts and approves the use of trained dogs to establish probable cause to search. 267 Ga. at 704 (1).

*Peter J. Skandalakis, District Attorney, Anne C. Allen, Assistant District Attorney*, for appellee.