A07A1763. WOODARD v. THE STATE.
A07A1764. LEWIS v. THE STATE.
(658 SE2d 129)

BERNES, Judge.

Appellants Bernal Stewart Lewis III and William Eric Woodard were jointly indicted, tried, and convicted of trafficking in cocaine and possession of less than one ounce of marijuana. Woodard also was convicted of possession of cocaine. In these companion cases, appellants argue that the trial court should have suppressed the drug evidence seized by police and contend that there was insufficient evidence to convict them of the cocaine trafficking and possession of marijuana charges.[1] For the reasons discussed below, we affirm.

1. In reviewing the trial court's denial of a motion to suppress, we are mindful of the following:

---

[1] Woodard does not challenge the sufficiency of the evidence as to his conviction for possession of cocaine.

First, the judge sits as the trier of facts. The trial judge hears the evidence, and his findings based upon conflicting evidence are analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support it. Second, the trial court's decision with regard to questions of fact and credibility must be accepted unless clearly erroneous. Third, the reviewing court must construe the evidence most favorably to the upholding of the trial court's findings and judgment.

(Citation omitted.) *Moody v. State*, 273 Ga. App. 670 (1) (615 SE2d 803) (2005). Furthermore, in evaluating the trial court's ruling on a motion to suppress, we are not limited to testimony submitted at the hearing on the motion but may also consider trial testimony. *Postell v. State*, 279 Ga. App. 275, 276 (1) (630 SE2d 867) (2006).

Viewed in this light, the record evidence shows that in the early morning hours of August 27, 2004, the police conducted a roadblock and safety checkpoint in Rabun County. The purposes of the roadblock were to check for driver's licenses, vehicle registrations, impaired drivers, and unsafe automobile equipment. The police stopped every vehicle that approached the checkpoint.

Shortly after midnight, Lewis pulled the van he was driving up to the roadblock. Woodard sat in the front passenger seat. A sheriff's deputy who also served as an agent on the Northeast Georgia Drug Task Force approached the van and requested that Lewis produce his driver's license and vehicle registration. Lewis handed the agent his license, as well as a registration card in someone else's name. Lewis told the agent that the van belonged to his sister. While holding Lewis' license, the agent then walked to the back of the van and noticed that the license and the vehicle license plate were from different states. As a result, the agent decided to check whether the vehicle was stolen. The agent also observed that the back tires of the van were "extremely worn" to the point of being "bald." Because of the unsafe tires, the agent decided to issue Lewis a warning and consequently told Lewis to pull the van over to the shoulder of the road.

After Lewis pulled over his vehicle, the agent requested that Lewis get out of the van and step to the rear of the vehicle. The agent also handed Lewis' license to a sheriff's deputy standing nearby and asked him to radio the dispatcher to run a computer check on the license. While waiting for the deputy to have the computer check run, the agent warned Lewis about the unsafe tires on his van and told him that if his license was valid and he had no outstanding warrants, he would be free to leave with only a warning about the tires.

Immediately thereafter, and less than a minute after Lewis had pulled the van over to the shoulder, the agent asked Lewis about his

passenger and travel itinerary. Lewis replied that he was coming from Atlanta, where he had picked up Woodard at a Waffle House. The agent then went over and spoke to Woodard, who was still sitting in the front passenger seat of the van. At the time that the agent spoke with Woodard, Lewis' license had not been returned to him. The agent requested identification from Woodard, but he did not have any. Woodard, however, told the agent his name and date of birth, which the agent provided to the other deputy so that a computer check for outstanding warrants could be conducted. The agent then asked the same questions of Woodard that he had asked of Lewis. Woodard told the agent that he and Lewis had driven from Franklin, North Carolina, to Georgia in order to search for employment and were driving around putting in job applications.

The agent testified that based on his training and experience with drug couriers, he knew that they "sometimes don't get their stories straight before they actually haul narcotics," since many times they "really [do not] know each other" prior to their involvement together in transporting the drugs. As such, the agent believed that the inconsistent stories told by appellants indicated that they were trying to hide their involvement in criminal activity and might have contraband hidden in the van. He also believed it highly suspicious that Woodard said that the two men were putting in job applications when it was after midnight. As a result, the agent returned to where Lewis was standing and asked him for consent to search the van. Lewis consented. The agent was unsure whether Lewis' license had been returned at the time consent was given. According to the agent, no more than five minutes elapsed from when Lewis initially handed the agent his license until Lewis consented to the search of the van.

After having Woodard exit the van, the agent searched the van interior and uncovered a white shoe under the driver's seat that had more than 28 grams of cocaine and less than an ounce of marijuana sticking out of it. The agent then arrested appellants and had them transported to the county jail. At the jail, an intake officer searched Woodard and found a smoking pipe containing cocaine in his shoe.

Following their arrests, appellants were jointly charged with trafficking in cocaine and possession of less than one ounce of marijuana for the drugs found in the van, while Woodard alone was charged with possession of cocaine for the drugs discovered in the smoking pipe. Appellants subsequently moved to suppress all of the drug evidence seized by the police, and the trial court denied the motion. A jury trial followed in which appellants were convicted on all the charges.

After their convictions, appellants moved for the trial court to reconsider its denial of their motion to suppress and also moved for a

new trial. In support of their motions, appellants argued that the license check allegedly conducted during the traffic stop was pretextual and for the first time presented a certified copy of the 911 dispatch log and an audio tape of the radio communications between the dispatcher and the deputy who assisted the special agent during the traffic stop. The log and audio tape reflected that the deputy had not asked the dispatcher to run a computer check on Lewis' license, although he did ask that a check be run on Woodard. In light of these records, the state stipulated that a computer check was never run on Lewis' license during the traffic stop. After conducting a hearing, the trial court denied the motions. These companion appeals followed.

On appeal, appellants contend that the trial court erred in denying their motion to suppress, their motion for reconsideration, and their motion for new trial because the drug evidence was seized as the result of an illegal detention.[2] Specifically, appellants maintain that the trial court should have found that the agent who effectuated the traffic stop unreasonably prolonged their detention in violation of their rights under the Fourth Amendment to the United States Constitution.[3] They further argue that Lewis' consent to the search of the van was the product of the prolonged detention and that all drug evidence seized in the case was fruit of the poisonous tree.

(a) We conclude that the trial court did not err in denying appellants' motion to suppress. "The Fourth Amendment protects a person's right to be secure against unreasonable searches and seizures. The touchstone of the Fourth Amendment is reasonableness. Reasonableness, in turn, is measured in objective terms by examining the totality of the circumstances." (Citation omitted.) *Giles v. State*, 284 Ga. App. 1, 3 (1) (642 SE2d 921) (2007). To comply with the Fourth Amendment, the investigative stop of a vehicle cannot be prolonged beyond the time reasonably required to fulfill the purpose of the stop. *Salmeron v. State*, 280 Ga. 735, 736 (1) (632 SE2d 645) (2006). Once that purpose has been fulfilled, the continued detention of a vehicle and its occupants is constitutional only if "the officer has a reasonable articulable suspicion of other illegal activity or when the valid traffic stop has de-escalated into a consensual encounter." (Citation omitted.) *Giles*, 284 Ga. App. at 3 (1).

Appellants' detention by the agent following the traffic stop passes constitutional muster. As a preliminary matter, the agent was authorized to initially detain the van and its occupants and require them to pull over to the shoulder based on his observation that the

---

[2] Although a passenger, Woodard has standing to challenge his detention as part of the traffic stop and to seek the suppression of drug evidence obtained as a result of his alleged illegal detention. See *State v. McMichael*, 276 Ga. App. 735, 737 (1), n. 6 (624 SE2d 212) (2005).

[3] Appellants do not challenge the constitutionality of the police roadblock.

tires of the van lacked proper tread and his decision to issue a warning for that violation of state law. See OCGA § 40-8-74 (a) ("No vehicle equipped with solid rubber tires shall be used or transported on the highways, unless every solid rubber tire on such vehicle shall have rubber on its entire traction surface at least one inch thick above the edge of the flange on the entire periphery."). The agent was also entitled to detain the van and its occupants to investigate whether Lewis was in lawful possession of the vehicle, in light of the fact that his driver's license was from a different state than the vehicle license plate, and the vehicle registration card was in someone else's name. See *Kan v. State*, 199 Ga. App. 170 (1) (404 SE2d 281) (1991); *Davis v. State*, 194 Ga. App. 482, 483 (1) (391 SE2d 124) (1990).

Given these valid purposes for the initial detention, the purpose of the detention was not fulfilled simply by the agent warning Lewis about the unsafe tires. Rather, in order to investigate whether the vehicle was stolen, the agent was entitled to continue the detention to briefly question appellants about their relationship with one another and their travel itinerary. See *Kan*, 199 Ga. App. at 170 (1) (officer was entitled to detain and separately question driver and passenger about the destination and purpose of their trip, when at roadblock the driver failed to produce documentation showing that the vehicle was registered in either of their names, and the vehicle had an out-of-state tag); *Davis*, 194 Ga. App. at 483 (1) (holding that questioning of driver and passenger about their travel destination "did not exceed the permissible scope of investigation by the officer to determine whether the driver was . . . in lawful possession of the vehicle") (citation omitted). As such, the agent did not unreasonably prolong the detention when he briefly questioned the appellants separately about their relationship and travel itinerary.[4]

In turn, the agent did not unreasonably prolong the detention when he continued to detain appellants after questioning them about their relationship and travels. As noted, the agent received conflicting accounts from appellants about how they had met up with one another and their travels. Based on his special training and knowledge garnered from working in the drug task force, the agent believed that these conflicting accounts were highly suspicious and consistent with drug smuggling activity. Furthermore, Woodard's statement to the agent that appellants were driving around putting in job applications was particularly suspect, since the traffic stop occurred late at

---

[4] Georgia precedent also makes clear that the agent did not unreasonably expand the detention by requesting that Lewis exit the vehicle or by asking the other deputy to run a computer check on appellants to verify the validity of Lewis' license and to look for outstanding warrants. See *Rosas v. State*, 276 Ga. App. 513, 518 (1) (c) (624 SE2d 142) (2005); *State v. Williams*, 264 Ga. App. 199, 202 (590 SE2d 151) (2003).

night. Under these circumstances, the continued investigative detention of appellants was authorized because it was supported by articulable suspicion arising from appellants' conflicting statements to the agent. See *Medvar v. State*, 286 Ga. App. 177, 178 (1) (648 SE2d 406) (2007); *Anderson v. State*, 261 Ga. App. 657, 659 (583 SE2d 511) (2003); *State v. Hall*, 235 Ga. App. 412, 415 (509 SE2d 701) (1998); *Pitts v. State*, 221 Ga. App. 309, 311 (2) (471 SE2d 270) (1996); *Roundtree v. State*, 213 Ga. App. 793, 794 (446 SE2d 204) (1994).

It was at that point, immediately following the inconsistent accounts provided by appellants, that the agent asked and obtained consent to search the van. A request for consent to search that occurs during a lawful detention does not violate the Fourth Amendment. *Salmeron*, 280 Ga. at 736 (1); *Medvar*, 286 Ga. App. at 178 (1). Hence, the asking and receiving of consent from Lewis did not illegally extend the detention.

Lewis' consent entitled the agent to search the van, seize the drugs found therein, and arrest appellants. The subsequent searches of appellants at the jail thus were valid as incident to their lawful arrests. See generally *In the Interest of J. D. G.*, 278 Ga. App. 672, 673 (629 SE2d 397) (2006) (officer's discovery of drugs authorized the arrest of the defendant as well as the search of his person incident to that arrest); *Butler v. State*, 272 Ga. App. 557, 558 (612 SE2d 865) (2005) (noting that "a search based on voluntary consent eliminates the need for a search warrant or probable cause") (citation and punctuation omitted). Accordingly, the trial court committed no error in declining to suppress the drug evidence later introduced against appellants at their trial.

In arguing for the opposite result, appellants suggest that Lewis' license and the license plate on the van were in fact from the same state, and that, as a result, the agent had no basis for detaining appellants any longer than necessary for the issuance of the unsafe tire warning to Lewis. We disagree. The transcripts from the hearing on the motion to suppress and from the trial reflect that initially, the agent testified that Lewis' license was from Florida and the vehicle license plate was from North Carolina. However, on cross-examination at trial, the agent admitted that he might have mixed the two states up and that the license may have been from North Carolina and the license plate from Florida. As such, while the agent's testimony supports the conclusion that he might have transposed the states with respect to Lewis' license and the vehicle license plate, it does not support appellants' suggestion that Lewis' license and license plate were both from the *same* state. And, in any event, it was for the trial court, not this Court, to resolve any conflicts in the record or questions concerning the credibility of the agent in deciding the motion to

suppress. See *Davis v. State*, 232 Ga. App. 450 (1) (501 SE2d 241) (1998). Appellants' argument thus provides no basis for reversal.

(b) We likewise conclude that the trial court did not err in denying appellants' motion for reconsideration of the denial of their motion to suppress and their motion for new trial based on newly discovered evidence. The standard of review for these motions is whether the trial court abused its discretion. See *Hester v. State*, 282 Ga. 239, 241 (3) (647 SE2d 60) (2007); *Huntley v. State*, 244 Ga. App. 212, 214 (2) (535 SE2d 270) (2000).

Appellants contend that the trial court should have reconsidered their motion to suppress and granted their motion for new trial because of the additional evidence submitted by appellants after trial showing that the officers failed to run a computer check of Lewis' license during the traffic stop. Appellants argue that because the additional evidence allegedly shows that the officers were not waiting for a computer check to be run during the course of the detention, there were no grounds for detaining appellants following the warning about slick tires.

Although not framed as such, it is clear that appellants' motion for a new trial was based on newly discovered evidence. In order to obtain a new trial based on newly discovered evidence, a defendant is required to show that each of the following requirements was met:

> (1) that the evidence has come to his knowledge since the trial; (2) that it was not owing to the want of due diligence that he did not acquire it sooner; (3) that it is so material that it would probably produce a different verdict; (4) that it is not cumulative only; (5) that the affidavit of the witness himself should be procured or its absence accounted for; and (6) that a new trial will not be granted if the only effect of the evidence will be to impeach the credit of a witness.

(Citations and punctuation omitted.) *Timberlake v. State*, 246 Ga. 488, 491 (1) (271 SE2d 792) (1980). See also *Hester v. State*, 282 Ga. at 241-242 (3). "Failure to establish even one requirement of *Timberlake* is sufficient to deny a motion for new trial." (Citations omitted.) *Hester v. State*, 282 Ga. at 242 (3). Here, appellants made no showing that they exercised due diligence in obtaining the additional evidence; indeed, defense counsel for Lewis admitted at the hearing that the reason for not obtaining the evidence sooner was a failure to believe that the computer check of Lewis' license would be a "key issue." Given appellants' failure to show due diligence, the trial court acted within its discretion in denying the motion for new trial. See *Evans v. State*, 241 Ga. App. 32 (2) (525 SE2d 780) (1999) (motion for new trial properly denied when the defendant failed to exercise

diligence in obtaining the additional evidence). For the same reason, the trial court did not abuse its discretion in denying the motion for reconsideration. See *Huntley*, 244 Ga. App. at 214 (2).

In any event, the additional evidence does not mandate a result different from the one originally reached by the trial court in denying the motion to suppress. Even if the deputy who received Lewis' license from the agent mistakenly failed to have a computer check run of the license,[5] the scope and duration of the agent's investigative detention of appellants was reasonable, for the independent reasons discussed in Division 1 (a).[6] The trial court therefore did not abuse its discretion in denying appellants' motion for reconsideration and motion for new trial.

2. Appellants also maintain that there was insufficient evidence to convict them of trafficking in cocaine and possession of less than one ounce of marijuana. Appellants do not contest that the substances found in the shoe under the driver's seat of the van were cocaine and marijuana, or the respective weights attributed to those substances by the state. Rather, appellants argue that the state failed to prove that either of them knowingly possessed the illegal drugs.

> On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, and [appellants] no longer enjoy[ ] the presumption of innocence. We do not weigh the evidence or determine witness credibility, but determine only if the evidence was sufficient for a rational trier of fact to find [appellants] guilty of the charged offense[s] beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

---

[5] There is no evidence in the record reflecting that the deputy's failure to run the license was anything other than inadvertent, particularly since the deputy did have a computer check run on Woodard. As Lewis' defense counsel stated at the new trial hearing, "I make absolutely no claim in front of the bar of this Court that these officer[s] lied about a single thing. In all likelihood they were mistaken and they were honest mistakes."

[6] For the first time on appeal, Lewis raises the argument that his trial counsel's failure to exercise due diligence in obtaining the additional evidence constituted ineffective assistance of counsel. Lewis' current appellate counsel was not appointed until after the motion for new trial was denied and a notice of appeal was filed. As such, Lewis contends that the case should be remanded to the trial court for an evidentiary hearing on the ineffective assistance claim. We disagree. Even if a remand were otherwise appropriate, it is not necessary to remand an appeal when we can determine from the existing record that the appellant cannot satisfy the two-prong test enunciated in *Strickland v. Washington*, 466 U. S. 668, 695-696 (104 SC 2052, 80 LE2d 674) (1984). See *Hunter v. State*, 281 Ga. 693, 697 (7) (642 SE2d 668) (2007); *Stuart v. State*, 274 Ga. App. 120, 121 (616 SE2d 855) (2005). For the reasons discussed in Divisions 1 (a) and (b), any failure to exercise due diligence by Lewis' trial counsel would not have affected the outcome at trial and thus did not prejudice his defense. Accordingly, no remand is necessary in this case.

(Citation omitted.) *Jackson v. State*, 284 Ga. App. 619 (1) (644 SE2d 491) (2007). Viewed in this light, we conclude that the evidence was sufficient for a rational trier of fact to find beyond a reasonable doubt that appellants had joint constructive possession of the cocaine and marijuana.

"Constructive possession exists where a person though not in actual possession, knowingly has both the power and the intention at a given time to exercise dominion or control over a thing." (Citation and punctuation omitted.) *Jackson*, 284 Ga. App. at 620 (1). "As long as there is slight evidence of access, power, and intention to exercise control or dominion over an instrumentality, the question of fact regarding constructive possession remains within the domain of the trier of fact." (Punctuation and footnote omitted.) *Wright v. State*, 279 Ga. App. 299 (1) (630 SE2d 774) (2006).

(a) There was sufficient circumstantial evidence to prove that Lewis had the power and intention to exercise dominion or control over the cocaine and marijuana. Because Lewis was the driver of the van at the time of the traffic stop, there was a rebuttable presumption that he possessed the drugs in the van. See *Taylor v. State*, 263 Ga. App. 420, 422 (1) (587 SE2d 791) (2003); *Crenshaw v. State*, 248 Ga. App. 505, 507 (1) (546 SE2d 890) (2001). And, even if Woodard had equal access to the van, "equal access provides no defense where, as here, the evidence shows that the person who had equal access was in joint constructive possession of the contraband." (Footnote omitted.) *Crenshaw*, 248 Ga. App. at 507 (1). Moreover, the state presented testimony that the amount of cocaine found in the van had a street value of approximately $3,100, and a rational factfinder could infer that a third party would have "ke[pt] up with" drugs of such high value and would not have simply left them in the van. (Punctuation omitted.) *Townsend v. State*, 253 Ga. App. 316, 317 (558 SE2d 849) (2002). Finally, Lewis and Woodard's inconsistent stories about their travels "authorized the jury to infer that either or both were lying" and supported a reasonable inference that Lewis had the intent to exercise control over the drugs. *Taylor*, 263 Ga. App. at 422 (1). See also *Warren v. State*, 254 Ga. App. 52, 54 (1) (561 SE2d 190) (2002); *Allen v. State*, 191 Ga. App. 623, 625 (2) (382 SE2d 690) (1989). Accordingly, we conclude that a rational trier of fact could have found Lewis guilty beyond a reasonable doubt of the charged offenses. *Jackson*, 443 U. S. 307.

(b) We likewise conclude that there was sufficient circumstantial evidence to establish that Woodard had the power and intention to exercise dominion or control over the cocaine and marijuana found in the van. First, Lewis and Woodard's conflicting accounts of their travels, as well as Woodard's suspicious statement that they were putting in job applications in the middle of the night, created an

inference that Woodard was lying and had the requisite criminal intent. See *Taylor*, 263 Ga. App. at 422 (1); *Warren v. State*, 254 Ga. App. at 54 (1); *Allen*, 191 Ga. App. at 625 (2). Second, the fact that Woodard had on his person a smoking pipe that tested positive for cocaine also supported a reasonable inference that he intended to exercise control over the drugs in the van. See *Jones v. State*, 225 Ga. App. 673, 675 (1) (484 SE2d 702) (1997). Cf. *Akins v. State*, 184 Ga. App. 441, 442 (2) (361 SE2d 707) (1987) (presence of needle marks on appellant's arms, coupled with drug paraphernalia found with drugs, supported inference that appellant possessed the drugs found in the car). Hence, as with Lewis, we conclude that a rational factfinder could have found Woodard guilty beyond a reasonable doubt of trafficking in cocaine and possession of less than one ounce of marijuana. *Jackson*, 443 U. S. 307.

*Judgment affirmed. Ruffin, J., concurs. Blackburn, P. J., concurs in judgment only.*

DECIDED JANUARY 30, 2008 —
RECONSIDERATION DENIED FEBRUARY 18, 2008

*Leslie J. Cardin*, for appellant (case no. A07A1763).
*Healy & Svoren, Nina M. Svoren*, for appellant (case no. A07A1764).
*Michael H. Crawford, District Attorney, Robert D. Cullifer, Tricia Hise Leeman, Assistant District Attorneys*, for appellee.